[Civ. No. 6756. First Appellate District, Division One.—July 30, 1929.]

FRANK F. FARIA, Respondent, v. ADELINE FARIA et al., Appellants.

O. H. Speciale and Owen D. Richardson for Appellants.

E. H. Christian and E. S. Leslie for Respondent.

THE COURT.—This is an appeal by defendants from a judgment setting aside two deeds to a ranch in Alameda County.

The plaintiff Frank E. Faria and the defendant Adeline Faria were married in 1912 and in July, 1926, Mrs. Faria obtained an interlocutory decree of divorce upon the ground of extreme cruelty. The other two defendants are the minor children of that marriage. The ranch contains approximately seventeen acres of land, and was purchased in 1915 for $15,200, title thereto being taken in plaintiff's name. An initial cash payment of $9,000 was made on the purchase price, and the balance of $6,200 was secured by a mortgage, which was paid off out of the ranch earnings prior to the commencement of the present controversy. The $9,000 in cash used in making the initial payment was part of $12,500 received by plaintiff from the sale of a dairy which he owned prior to and at the time of his marriage. The Farias and their children lived on the ranch in question and the same was impressed with a homestead. On November 20, 1923, Faria was sued jointly with others as co-partners by a man named Campbell for $50,000 damages on account of the death of Campbell's wife, who was killed in a collision between a truck belonging to said copartners and Campbell's automobile; and approximately five months subsequent to the commencement of that action, to wit, on April 4, 1924, plaintiff conveyed the ranch to his wife by deed of gift and the deed was immediately placed on record. The present controversy arises out of the circumstances attending the execution of that deed, it being alleged in the complaint and found by the trial court that said deed was obtained by Mrs. Faria by fraudulent means and as a result of undue influence. The second deed was one of gift made by Mrs. Faria to the children following the divorce action, and was made without consideration. Upon the grounds mentioned, both deeds were set aside, subject only to the homestead rights, if any, of Mrs. Faria.

Appellant contends that heretofore, in an action brought against her husband and herself, it was judicially determined that her husband's purpose in conveying the ranch to her was to defraud his creditors, and that consequently he is precluded now from seeking to recover back that which

he has fraudulently conveyed; and moreover, that the evidence in the present case, aside from showing the fraudulent purpose of her husband above mentioned, is wholly insufficient as a matter of law to prove that her activities in connection with the execution of said deed amounted either to a fraud against her husband or an undue influence over him.

It appears that prior to the commencement of the present action, one Brandon, a judgment creditor of Faria's in the sum of $432.78, commenced an action (No. 93,935) against Faria and his wife to set aside the deed of April 4, 1924, upon the ground that it was made for the purpose of hindering, delaying and defrauding creditors. In that action Faria defaulted, but Mrs. Faria contested the same. Faria became a witness for Brandon, and testified that he conveyed the property to his wife so that it would not be lost to them as a possible result of the Campbell suit; and the trial court found in conformity with the allegations of the complaint that said deed was made for the purpose of defrauding creditors. At the time of answering, however, Mrs. Faria deposited in court the amount Brandon claimed was due him, and consequently the judgment in the action, which was entered on June 13, 1927, directed merely that the sum deposited in court be applied to the payment of Brandon's demand. In the meantime Mrs. Faria brought suit for divorce upon the ground of extreme cruelty. Faria defaulted, and on July 26, 1926, Mrs. Faria was granted an interlocutory decree of divorce, together with an allowance for the maintenance of the children. Neither the validity of the deed in question here nor the title to the property was involved in the divorce action; nor was any assignment made therein of the homestead. On October 27, 1926, Mrs. Faria conveyed the property by deed of gift to her children, reserving therein a life estate unto herself. Several months later Brandon obtained a second money judgment by default against Faria in the sum of $2,829.30 (action No. 96,338) and after causing an execution to be levied on the ranch instituted supplemental proceedings for the appraisal and setting apart of the homestead. Mrs. Faria and the children contested those proceedings upon the ground that by virtue of Faria's deed of gift of April 4, 1924, he parted with all interest in the property; but on October 18, 1927, the pro-

ceeding was determined adversely to their claims, and on appeal the trial court's action was affirmed by this court (*Brandon* v. *Faria,* 99 Cal. App. 594 [279 Pac. 192]) ; and with respect to the trial court's decision in *Brandon* v. *Faria* (No. 93,935) finding that the deed from Faria to his wife was void as against creditors, this court held that the facts there found "were *prima facie* evidence of an intent to defraud subsequent creditors (*Hemenway* v. *Thaxter,* 150 Cal. 737 [90 Pac. 116]). . . . "

It further appears that following the rendition of the judgment in the action of *Brandon* v. *Faria* to collect the sum of $2,829.30 (No. 96,338) the defendants herein sought to enjoin the levy of the execution on the ranch upon the ground that Faria had no interest therein, but the injunction was denied; and on appeal the Supreme Court affirmed the order or denial (*Faria* v. *Brandon,* 206 Cal. 730 [276 Pac. 106]), declaring, with reference to the trial court's decision in *Brandon* v. *Faria* (No. 93,935) that it had been "duly adjudged that Faria conveyed to his wife without consideration and when he was insolvent and for the purpose of hindering, delaying and defrauding his creditors."

It thus appears that twice have the courts of appellate jurisdiction recognized the decision in *Brandon* v. *Faria* (No. 93,935) as being a determination of the fact that the purpose of the gift deed of April 4, 1924, from Faria to his wife was to hinder, delay and defraud creditors; and indeed, during the trial of the present action, it was stipulated by Faria's counsel that such was its purpose; but it was claimed that the same was made "at the solicitation" of Mrs. Faria. If such was the purpose of the deed the law will not allow Faria to recover back the property he has fraudulently conveyed, for the rule in such case is that as soon as the fraudulent purpose of the conveyance is disclosed by the evidence the trial court will leave the parties where it finds them. (12 Cal. Jur. 1026, and cases cited.)

But Faria contends here, as he did before the trial court, that the fraudulent conveyance of April 4, 1924, was made at the solicitation of Mrs. Faria and as a result of misrepresentation, fraud and undue influence on her part and that consequently it was immaterial that the effect of such conveyance was to defraud creditors; and in support of

such contention he .cites cases which hold that the general rule to the effect that a court of equity will not grant relief to one who has made a deed to defraud creditors has no application where the deed was procured by the fraud and undue influence of the defendant, who will not be allowed to perpetrate a greater fraud and to take advantage of his own wrong and of the absence of free consent of the grantor and who, under such circumstances, under express statutory provision, takes as trustee of the grantor (*Donnelly* v. *Rees*, 141 Cal. 56 [74 Pac. 433]).

In this regard the allegations of the complaint herein charging those elements and upon which the judgment is grounded are summarized in respondent's brief as follows: " . . . that beginning about the fourth day of December, 1923 (which was shortly after the filing of the Campbell action for damages), and continuously thereafter until the date of said deed of gift, defendant, Adeline Faria, earnestly and persistently solicited and requested plaintiff to make said deed, in consideration of the love and affection of plaintiff for his said wife, and upon the repeated representation that she would always permit and allow plaintiff to occupy, use, possess and enjoy said lands together with all the rents, issues and profits thereof during the natural life of plaintiff." Also that defendant represented to plaintiff "that unless he would execute said deed she would leave and abandon plaintiff and take with her the minor children of the parties." The only evidence set forth in respondent's brief to support said allegations consists of the testimony given by respondent himself, the essential portions of which are as follows: "Q. Now, shortly after the time that you received the summons in that $50,000.00 suit, your wife had certain conversations with you about the property? A. Yes, sir. Q. And what did she say to you about this property, shortly after you received the papers in the Campbell suit? A. She wanted me to pass the ranch so that we wouldn't lose the ranch. Q. And you have seen, or did see, your attorney, Mr. Mitchell, about the matter,—that is, about the Campbell suit, about at the same time that she started to talk to you about the ranch? A. Yes, sir, just as soon as I got the papers I went to see my attorney. The Court: What was the date of that suit? Mr. Christian: November 20, 1923. Q. Now, when

she first asked you to pass the ranch over to her, what did you say to her? A. I told her I didn't want to pass it, because it was the only thing I had. . . . Q. Now, did she say anything else to you about it? A. She used to talk about that every day, so that I would pass the ranch to her. Q. What did she say? A. She said I could stay on the ranch just the same as before, sell all the fruit, and run the ranch, and stay there just as before. Q. And did she tell you that upon many occasions? A. Yes, sir. Q. Now, when she told you that at first, what was your answer? A. I told her I wouldn't pass her the ranch. Q. And did she keep asking you to make a deed? A. Yes, sir. Q. Now state whether or not, during any of these conversations, she stated that she was going to leave you, and take the children along with her? A. Yes, sir. Q. now, just tell the Court just what she did say. A. She said that, if I wouldn't pass the ranch over to her, she was going to go away with the children, and herself, and was going to go to Court and take a divorce from me. . . . Q. State whether or not you made up your mind to make this deed a long time, or short time, before the 4th day of April, 1924? A. Just about that time I made up my mind. Q. State whether or not the constant request from your wife had any effect on your mind? A. Yes, sir, it would bother my head. Q. And state whether or not you had any fear of losing the ranch in the beginning,—that is, from the time that your wife started to ask you to pass the ranch into her name? A. No, sir. Q. Will you tell the Court when, if ever, with respect to the date of the transfer of the property, did you have any fear because of the representations of your wife of losing the property? A. Near the time of making the deed, that is just about the time I fear. Q. And state whether or not the fact that your wife persistently and constantly asked you to make this deed,—if that is the reason why you had the fear of losing the ranch? A. Yes, sir.''
He further testified that the deed in question was drawn by and executed before an attorney in Oakland with whom his wife had previously consulted; but that before executing the deed he consulted alone with said attorney about the matter and the next day returned to the attorney's office, accompanied by his wife, and executed the deed; that after delivering the deed to his wife it was left with the attorney

to be recorded; and that said attorney told him that if he did not convey the property to his wife they would likely lose the ranch and "be thrown out in the street." He also testified that he would not have deeded the property to his wife if it had not been for such importunities and representations.

The evidence shows without dispute that following the execution of the deed from Faria to his wife they continued to live together upon the premises as husband and wife for over two years, at the end of which period Mrs. Faria left the ranch, taking the children with her, because, as she claimed, of Faria's cruel treatment; that afterward she lived with her parents and shortly after leaving the ranch commenced the suit for divorce, which, as stated, Faria allowed to go by default; that soon after Faria was served with summons in the divorce action he quit the ranch voluntarily and did not return. The evidence shows that Faria was the owner also of another ranch, referred to as the Creek ranch, which he sold about the same time he conveyed the ranch in question to his wife, for the purpose, as he claims, of paying certain creditors; but he admits having testified on behalf of Brandon, in the latter's suit to set aside the present deed, that he conveyed the ranch in question to his wife to avoid the possible consequences of the Campbell suit.

Mrs. Faria admitted having talked with her husband about the Campbell suit, but denied having importuned him to convey the ranch to her, stating that "he wanted to deed the property to her." She also denied having made any of the representations above mentioned. She also contradicted Faria's testimony as to the circumstances attending the execution of the deed. She stated that soon after the commencement of the Campbell suit Faria declared his intention of conferring with said attorney in Oakland, and that she told him she would go with him; that the deed was prepared at the request of Faria, and that the attorney told him at that time that he must not afterward "blame him for making the deed because he wanted to make the deed himself." She further testified that she was compelled to leave the ranch and take refuge with her parents because of Faria's cruel treatment; that he called her vile names, threatened to kill her, struck her in the face, chased her with pruning scissors and with a fork, and declared his intention to sell

whisky on the ranch. Faria denied having committed the acts of cruelty above mentioned, but it appears from the record that said acts constituted the main grounds for divorce, which as stated, Faria allowed to go by default.

Admittedly, under the rule governing the determination of appeals, all conflict in the testimony must be resolved in support of the conclusions reached thereon by the trial court; but after so resolving such conflict we are of the opinion that the evidence here is legally insufficient to establish, as against the appellant, a case of undue influence or actionable fraud. It is conceded, of course, that at the time of the execution of the deed from Faria to his wife their relationship was one of confidence and trust.

But, as held in the case hereinafter cited, the mere relationship of husband and wife does not constitute *prima facie* evidence of undue influence against the wife (*Wilcox v. Wilcox*, 171 Cal. 770 [155 Pac. 95]; *McDougall* v. *McDougall*, 135 Cal. 316 [67 Pac. 778]), nor is there any presumption that a voluntary deed of conveyance or gift from husband or wife is the result of undue influence; and while it may be presumed that a wife has influence over her husband, this influence is not presumed to be undue (*McDougall* v. *McDougall, supra*) unless it appears from the face of the transaction or from the proof that the marital confidence was used to take an unfair advantage or that this confidence was subsequently violated (*Diamond v. Sanderson*, 103 Cal. 97 [37 Pac. 189]; *Yordi* v. *Yordi,* 6 Cal. App. 20 [91 Pac. 348]; *Hensley* v. *Hensley,* 179 Cal. 284 [183 Pac. 445]). In other words, as declared in *Brison* v. *Brison,* 90 Cal. 323 [27 Pac. 186, 190], "the influence which the law presumes to have been exercised by one spouse over the other is not an influence caused by any act of persuasion or importunity, but is that influence which is superinduced by the relation between them, and generated in the mind of the one by the confiding trust which he has in the devotion and fidelity of the other. Such influence the law presumes to have been undue whenever this confidence is subsequently violated or abused. (Civ. Code, sec. 1575, subd. 1.)"

Applying the foregoing legal rules to the peculiar circumstances confronting the Farias at the time of and immediately preceding the execution of the deed in question with reference to the demands then being made upon

them by Faria's creditors, and the fear entertained by them that as a possible outcome of the Campbell suit they might lose the ranch, it is evident that Mrs. Faria's activities in importuning and persuading her husband to execute the deed in question, and the influence she may have exercised over him in that respect, did not constitute undue influence within the meaning of said legal rules, unless it can be held that the promises and statements made by her at the time were not made in good faith, or, if so made, that the marital confidence which moved her husband to execute the deed was subsequently violated or abused.

As to the representation that she "would always permit and allow said plaintiff to occupy, use, possess, and enjoy the whole of said real property hereinafter described, together with all the issues, rents, and profits thereof, and each and every part thereof," there is no evidence that she ever refused plaintiff any such rights or privileges while they lived together on the ranch, and plaintiff admits that after he was served with the papers in the divorce proceeding he left the ranch of his own accord and did not return. In this connection it may be stated that at the time he was served with summons in the divorce action he was served also with a temporary injunction restraining him "from injuring plaintiff, or annoying, or harassing or interfering with plaintiff's custody of their minor children," and that said injunction was read to him by the officer at the time it was served; and Faria claimed that owing to his limited knowledge of the English language he thought he was ordered to leave the ranch. But the evidence shows that as soon as the papers were served upon him he consulted with and was advised by two attorneys of his own selection.

And with reference to Mrs. Faria's statement that unless her husband conveyed the ranch to her she would leave and abandon him and take the children with her, it must be assumed that such statement was based upon the implied understanding that if she did continue to live with him she would be treated with kindness and respect. It appears from the record of the divorce proceeding, however, that during the two years following the execution of the deed Faria struck her about the face with his fists and threat-

ened to kill her; that he threatened to cut her stomach with a pair of large pruning shears, and that he called her vile and offensive names; that on several occasions she was obliged to seek refuge elsewhere because of his violence and threats to kill her; that during the year 1926, at the home of said parties, without any cause or provocation, Faria "told her to go away and that he will be satisfied if she goes away because he cannot stand to see her any longer and to get out of his sight." Manifestly, under such circumstances it cannot be held that in order to maintain her legal rights under the deed of gift she was compelled, morally or legally, to continue the marital relation with him or to remain longer on the ranch; nor can her departure under such circumstances be deemed in law to be a violation of the marital confidence or a breach of the agreement on her part. In other words, as held in *Tillaux* v. *Tillaux*, 115 Cal. 663 [47 Pac. 691], a husband cannot take advantage of his wife's failure to carry out her promises when he has made it impossible for her to do so. And it is not claimed here that there was any promise made by Mrs. Faria to convey back the property under any circumstances.

For the reasons stated we are unable to sustain the trial court's finding that at the time Mrs. Faria made the representations, statements and promises above mentioned she well knew that the same "were false and untrue and were made with the intent and purpose to defraud plaintiff and to induce him to transfer" the ranch to her.

In support of the judgment respondent further contends that in executing said deed he acted on the advice of his wife and her attorney, and did not have any independent legal advice. The evidence shows, however, that soon after he was served with summons in the Campbell suit and prior to the execution of the deed in question he consulted with two attorneys; and, moreover, he makes no claim here that when he executed the deed he was not acting freely, voluntarily or without a full knowledge of the facts or the effect of the transfer, but only that he was persuaded by his wife to make the deed to the property to her upon the representations and statements above mentioned. In any event it is not essential in all cases of confidential relations, even where the utmost good faith

is required to be shown, that before a transfer can be shown to be valid and binding the confiding party must indispensably have had independent advice (9 Cal. Jur. 230).

The judgment is reversed.