[Civ. No. 14696. Second Dist., Div. Three. Mar. 19, 1945.]

LILLIAN N. BUCHMAYER, Appellant, v. FRANK W. BUCHMAYER, Respondent.

W. L. Engelhardt for Appellant.

Irl Solomon and William G. Randall for Respondent.

SHINN, J.—Lillian Buchmayer sued Frank Buchmayer for divorce upon the ground of cruelty. They had been married for three years and seven months at the time of their separation. The defendant answered and filed a cross-complaint for divorce upon the ground of cruelty. By his cross-complaint he also sought to have set aside a deed executed by himself to himself and his wife, which placed in joint tenancy three parcels of income property, which were his separate property. Findings and judgment were in favor of defendant and he was granted a decree of divorce, which also annulled the joint tenancy deed upon the theory that it had been obtained by plaintiff through the use of undue influence. Plaintiff appeals from the judgment; she is satisfied to have lost her husband by the decree, but not the property.

The first cause of action of the cross-complaint alleged cruelty in general terms. The second alleged that defendant was 74 years of age and plaintiff 45 when they married; that defendant then owned the real property in question; that plaintiff represented and promised that if defendant would marry her and make a will leaving her all his property she would treat him with conjugal love and affection and faithfully care for him during the remainder of his life; that defendant believed said representations and promises and was thereby induced to and did marry plaintiff and make a will in her favor; that plaintiff did not intend to and did not keep her promises and at all times after the marriage treated defendant with great unkindness and nagged and vexed and annoyed him to anger in order to aggravate him into giving her grounds for divorce. It was also alleged that defendant made a deed placing the property in question in joint tenancy, but it was not alleged that this was done in reliance upon the antenuptial promises, and no facts were stated which would constitute a cause of action for annulment of the deed. In the third cause of action it was alleged that plaintiff represented to defendant that under the law of California she owned a half interest in his real property as community property and that the law required him to make a deed in

her favor as evidence of her interest; that she knew her representations to be untrue; that defendant was ignorant of the law, which fact was known to plaintiff; that he believed her representation that he was obliged under the law to deed her a half interest in the property, and by reason thereof executed the deed, which he would not have executed except for her false representation. It was alleged that he did not intend to make a gift of any interest in the property to plaintiff "save and except as title to said property should eventually become vested in the cross-defendant upon the taking effect of the last will and testament of the cross-complainant, as hereinbefore set forth." The fourth cause of action alleged that soon after the marriage plaintiff commenced and thereafter persistently urged defendant to convey her his property and represented and promised that if he would do so she would hold it as a "sacred trust" and administer it for his interest and benefit; "that the cross-complainant had great confidence in the good faith of the cross-defendant, and verily believed that the cross-defendant would truly fulfill her representations and promises to the cross-complainant as above set forth. That by reason of the confidence which cross-complainant had in the cross-defendant, and by reason of his age and enfeebled condition, the cross-complainant was unable to resist the continuous importunity of the cross-defendant; but the cross-complainant was over-persuaded and unduly influenced thereby, and the cross-complainant did execute and deliver to cross-defendant the said deed of conveyance, Exhibit A, as hereinbefore set forth." It was then alleged that plaintiff wholly failed to keep and perform her promises, that she collected rents from the properties, appropriated them to her own use, and refused to account to defendant therefor.

The parties were residents of Los Angeles, they went by automobile to Florida, where they were married November 27, 1939, they returned to Los Angeles soon thereafter, the deed in question was executed March 30, 1942, and they separated July 21, 1943, when defendant departed from the house. Both parties testified fully as to the circumstances under which they first met, over sandwiches and beer in a cafe, and their subsequent platonic friendship and association prior to the marriage. Plaintiff was then the operator of a beauty shop, which had been her business for many years; defendant was a widower, without blood relatives so far as he knew and, admittedly, desirous of companionship. They saw each other

at frequent intervals for a period of about two years. Some time before the marriage defendant loaned plaintiff $1,000 with which to complete the purchase of a house and lot. Plaintiff purchased a car in 1939, intending to drive to Florida, and defendant asked to go along, which was agreed upon. Defendant gave plaintiff $350 for her expenses on the trip and paid his own expenses. They occupied separate rooms on the trip, and in Florida, until they were married. Each accused the other of proposing the marriage. They agreed, however, that plaintiff insisted, as a condition to marriage, that defendant execute a will in her favor, to which defendant willingly consented.

The issues were tried at length, the court found plaintiff to have been guilty of extreme cruelty, and made additional findings as follows: "That prior to March 30, 1942, Defendant and Cross-Complainant was the sole owner of the following described real property in the County of Los Angeles, State of California, to-wit: [Here a description of the three properties.] That on March 30, 1942, Defendant and Cross-Complainant made and delivered to Plaintiff and Cross-Defendant a joint tenancy deed of the foregong real property wherein Defendant and Cross-Complainant was described as grantor and Defendant and Cross-Complainant and Plaintiff and Cross-Defendant were described as grantees; that on said date and prior thereto Defendant and Cross-Complainant was a man of the age of 76 years and Plaintiff and Cross-Defendant was 45 years of age. That on said date and prior thereto Defendant and Cross-Complainant was sick in mind and body; that his mentality was weak and childish; that for the purpose of obtaining said joint tenancy deed, Plaintiff and Cross-Defendant threatened him with criminal prosecution and falsely accused him of criminal acts. That as the result of said threats and accusations and as the result of Defendant and Cross-Complainant's mental condition, he made the aforesaid deed while under the domination and influence of Plaintiff and Cross-Defendant and without consideration from her."

It is contended that the evidence was insufficient to support the finding that the deed was procured by means of undue influence. We conclude that this finding is without evidentiary support and that the judgment must be reversed.

There are three classes of undue influence defined by section 1575 of the Civil Code, as follows: "Undue influence consists: 1. In the use, by one in whom a confidence is reposed

by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; 2. In taking an unfair advantage of another's weakness of mind; or, 3. In taking a grossly oppressive and unfair advantage of another's necessities or distress.'' We are not concerned here with the third class. ■ In cases of the first class which arise out of breach of a confidential relationship, weakness of mind of the person imposed upon is not a necessary element. If the trustee obtains an advantage over his beneficiary the law raises a presumption that undue influence was used, the burden is upon the trustee to overcome the presumption, which can be done only by proof that there was no breach of duty, and that the transaction was understood by the beneficiary and was entirely fair as to him. (Civ. Code, §§ 1575 and 2235.) ■ In the second class of cases the existence of a confidential relationship is not a necessary element, although weakness of mind of the person imposed upon is such an element. Where no trustee or confidential relationship exists, proof that one of the parties to a transaction obtained an advantage over the other does not raise a presumption that undue influence was used and hence does not place the burden upon the one benefited of proving that it was not used. (*Ripperdan* v. *Weldy* (1906), 149 Cal. 667, 671 [87 P. 276].) ■ While it is to be assumed, in the absence of evidence to the contrary, that the husband and wife reposed confidence in each other, that fact alone does not raise a presumption against the validity of their dealings with each other. (*Wilcox* v. *Wilcox* (1916), 171 Cal. 770, 772 [155 P. 95] ; *Faria* v. *Faria* (1929), 100 Cal. App. 177, 185 [280 P. 187] ; *McDougall* v. *McDougall* (1902), 135 Cal. 316 [67 P. 778] ; *Stiles* v. *Cain* (1901), 134 Cal. 170 [66 P. 231].) ■ Defendant's cross-complaint was drawn on the theory that the deed was executed solely by reason of certain specific representations and promises of plaintiff. There was a sufficient finding of undue influence, independent of the existence of a confidential relationship, but this finding was not supported by the evidence. It was found that defendant's mentality was weak and childish, that plaintiff threatened him with criminal prosecutions, and that the deed was executed by reason of such threats and defendant's weakness of mind. These are the only facts found which tended to establish a case of undue influence. It was not alleged in the cross-complaint that plaintiff ever accused

defendant of the commission of crimes or threatened him with criminal prosecution. Defendant testified to no such threat or threats. One witness, a former tenant of defendant, testified that upon her return from the theater about midnight sometime in the spring of 1940, which was about two years before the deed was executed, she overheard plaintiff and defendant quarreling in the rear of their house and heard plaintiff threaten that if defendant did not "sign over the property to her she would put him in the pen for taking her out of the state." She testified that she was standing on the sidewalk in front of the house at the time. We think it pertinent to quote in connection with her testimony, which would seem to have been confusing to the court and counsel, the following statement made by defendant's attorney: "Mr. Solomon: I have in mind the age of the witness, and the court will have in mind whether or not she is capable of making statements correctly or not, or what she really meant by what she said." This testimony was admissible under the allegation of cruelty and was doubtless offered thereunder; there was no application to amend by alleging threats as a ground for setting aside the deed. Even if the court had believed that plaintiff uttered such a threat some two years before the execution of the deed, there was nothing in the evidence to indicate that defendant would have taken the threat seriously, and there was much to indicate that he would have appreciated the ludicrous nature of a charge that he had taken plaintiff over the state line for immoral purposes. If the threat was ever made, it evidently left no impression upon defendant. There was nothing in the cross-complaint or in defendant's testimony to the effect that he executed the deed in order to escape criminal prosecution for alleged violation of the Mann Act. Defendant testified explicitly that he had no remembrance whatever of having executed the deed and he claimed to have no recollection as to the circumstances of its preparation. He testified that he had been acquainted with Mr. Bradley, branch manager of the Bank of America for twenty-two years; that Mr. Bradley was a friend in whom he had "a lot" of confidence and who advised him in business matters; that he and Mrs. Buchmayer went to see Mr. Bradley and talked to him about the deed; that Mr. Bradley said he would send someone out to see defendant; that a man did come to the house but that defendant had not seen him before and did not remember who he was. It ap-

peared that the man who came was an attorney; he prepared wills for the parties, which were duly executed. Defendant testified that he could not remember about the wills. The only evidence in the case as to any conversation between plaintiff and defendant with respect to the deed in question was that given by defendant, as follows: ''Q. State to the court whether or not you remember signing that signature on there. A. I don't remember. Q. You made this deed? A. I don't remember that. We went down to the bank and the banker told us that Mr. Max Bradley said he would send a man over to take care of us. Q. State if you know, who drew this deed. A. No, sir, I don't know. Q. State the conversation with Lillian concerning this deed. What did he say as to why the deed should be made out to her? A. I think she was afraid I was going to die. She wanted to get it, even before the stroke. We had a quarrel over that. Q. What quarrel—— you had a quarrel? A. Yes, we had quite a set-to. I told her it would cost too much money to have it transferred, and I did not think we ought to do it. Q. What did she say to that statement? A. She said, 'If you want to have it done—— you haven't got anyone here anyway, and you might as well have it done.' '' The deed was acknowledged before Mr. Bradley as a notary public. He was called as a witness to testify to bank records but was not questioned at all as to the circumstances under which the deed was executed and acknowledged. Plaintiff denied having anything to do with the preparation or execution of the deed. The finding that defendant executed the deed because of threats of criminal prosecution, coupled with mental weakness, is not sustained by the evidence.

The court found as a conclusion of law that the deed was made ''as a result of the undue influence of plaintiff and cross-defendant.'' Defendant would have us consider this conclusion as an additional finding, inadvertently labeled a conclusion of law. It is insisted that the judgment would then have support, independent of the finding which we have held to be unsupported by the evidence. We think this conclusion cannot be regarded as a finding and that it was not intended as such. The findings should be, and were, specific as to the acts of plaintiff which constituted the use of undue influence. The specification of definite acts as the means employed to bring about the execution of the deed excluded, by necessary inference, the use of other means. The qualifying phrase ''while

under the domination and influence of plaintiff and cross-defendant'' must be read with the preceding portion of the sentence and as merely descriptive of a condition allegedly brought about by the threats. Even if we were to treat the phrase, or the conclusion in question, or both of them, as intended to serve as findings, they would not be sufficient to support the judgment. There would be no way of knowing of what the undue influence consisted. The cross-complaint pleaded as a complete cause of action the false representation that under the law plaintiff was the owner of one-half of defendant's property and that defendant was required by law to deed her share; and as a separate and distinct cause of action that plaintiff promised to hold the interest in trust for defendant and that defendant did not intend to make a transfer which would have any greater effect than a will in plaintiff's favor. It is contended by defendant that the cross-complaint went further and alleged sufficient facts to show the existence of a confidential relationship and that plaintiff took advantage thereof by continually insisting that defendant should turn over his property to her and that defendant finally succumbed to plaintiff's influence and acceded to her wishes. From this premise it is argued that the burden of proof was upon plaintiff to satisfy the court that the transaction was fully understood by defendant and that the deed was given freely and without the exertion by plaintiff of any influence or other sort of adverse pressure.

In view of the conflicting theories of the cross-complaint, a general statement that the deed was procured through the exercise of undue influence would establish no factual basis for a decision. It would be impossible to determine the grounds of the decision or whether they were sufficient to render the deed invalid, or were sufficiently established by the evidence. No evidence whatever was introduced to prove any of the alleged representations or promises. No facts were alleged or proved which would have warranted a finding that a confidential relationship existed between the parties. It is true that a confidential relationship usually exists between husband and wife and that it is commonly said that it is presumed to exist. But the cross-complaint and defendant's testimony, as well, related a history of plaintiff's broken promises from the time of the marriage and a continuous course of cruel and abusive conduct toward defendant. Not only was it found that plaintiff accused defendant of crimes and

threatened him with criminal prosecution, but it was also found that she had pursued a course of conduct toward defendant which consisted of "striking him, swearing at him, yelling at him, threatening him with criminal prosecution, falsely accusing him of crime, importuning him to deed to her his separate property without consideration, and other acts and things inimical to her marital obligations." Under these conditions it would have been impossible for the influence of a confidential relationship to exist, for, as said in *Brison* v. *Brison* (1891), 90 Cal. 323, 336 [27 P. 186]: "The influence which the law presumes to have been exercised by one spouse over the other is not an influence caused by any act of persuasion or importunity, but is that influence which is superinduced by the relation between them, and generated in the mind of the one by the confiding trust which he has in the devotion and fidelity of the other. Such influence the law presumes to have been undue, whenever this confidence is subsequently violated or abused. (Civ. Code, sec. 1575, subd. 1.)" The facts found were sufficient to negative the existence of a confidential relationship and furnished no basis for a presumption that undue influence had been exercised. A finding of the use of undue influence would have been unwarranted without proof independent of the presumption of the exertion of influence at the time the deed was executed, and there was no such proof. We conclude that the specific finding of the exercise of undue influence was intended to be the only finding upon that issue and that any other finding of the use of undue influence as specifically alleged in the cross-complaint or based upon the assumed existence of a confidential relationship would have been unsupported by the evidence.

 We might add that upon the record which is before us the case is not one which falls within the rule that whenever there is great weakness of mind in a person executing a conveyance of land, arising from age, sickness or any other cause, though not amounting to absolute disqualification, and the consideration given for the property is grossly inadequate, imposition or undue influence will be inferred and a court of equity will, upon proper and seasonable application of the injured party, or his representatives or heirs, interfere and set the conveyance aside. (*Moore* v. *Moore* (1880), 56 Cal. 89, 94, 9 Cal.Jur. 224.) There was no evidence of great weakness of defendant's mental faculties. He had suffered a slight

paralytic stroke some two months before he executed the deed but this was not confining nor generally disabling and he recovered from it satisfactorily. He attended to his business affairs without assistance and pursued his accustomed activities. It might be assumed from the fact that he testified that he had no remembrance of having executed the deed that he had suffered some severe loss of memory. The record tends to prove the reverse. He had a clear recollection of the events as to which he was questioned, with the exception of the ones upon which his attack upon the deed depended. He testified at length as to the circumstances under which he first met plaintiff, of their association together, their marriage and continued quarreling down to the time of the separation. He was shown to have been thrifty, he collected with interest the sum of $1,000 which he had loaned plaintiff prior to the marriage, and he successfully resisted what he described as her continued demands for his money and other property. Numbers of his intimate friends, including a relative by marriage, testified in his behalf and only one was questioned as to his supposed mental retrogression. This witness testified as to his observations a few days before the deed was executed: "A. His mind did not seem to be what it should. He said several things that made me question his mentality. He was in a very nervous condition." It is to be noted that this witness was also a witness to defendant's will, executed at the same time as the deed, and that he subscribed the declaration that he believed defendant to be of sound mind. Two physicians, brothers, who prescribed medicine to reduce a blood clot which was the cause of defendant's illness, were questioned as to their observations of his mental condition. One testified that some five days after his attack he was rather childish in action, "a little below par mentally. . . . I don't remember any of the questions that I asked him, but I have that impression." The other testified that a year later "I thought he was far below par," and in response to a leading question, "I would say he was childish." No one of these witnesses gave any reason for his opinion. The physicians saw defendant but a few times, did not examine him as to his mental condition and made no notes thereof. Mr. Bradley, defendant's business adviser, and who arranged for the preparation of the deed and the wills, was not questioned as to defendant's mental condition. As we have already stated, defendant had no blood relatives, and was at all times willing

that plaintiff should receive his property upon his death. He evidently consulted with his banker before executing the deed but did not care to have the latter testify to any of the circumstances.

There was nothing unnatural or which shocks the conscience in defendant's placing his property in joint tenancy with his wife. It is unfortunate that his act did not end the discord between them, but in the present action he has failed to establish grounds for annulment of the deed. Four days before the trial he verified his cross-complaint, setting forth specific representations and promises upon the part of plaintiff. Upon the trial he professed to remember nothing as to the same matters. Without evidence that plaintiff exerted an influence which amounted to the substitution of her will for his own, defendant was not entitled to findings and judgment declaring the deed invalid.

The judgment is reversed and a new trial is ordered as to the issue of title to the real property, and is affirmed insofar as it awards plaintiff a divorce.

Desmond, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied April 13, 1945, and the judgment was modified to read as above.