511 P.2d 746

**Eula Jean ALLGOOD, Plaintiff-Appellee,**

v.

**Roy O. ORASON, Defendant-Appellant.**

No. 9573.

Supreme Court of New Mexico.

July 6, 1973.

Solomon, Roth & Kaufman, Santa Fe, for defendant-appellant.

Jones, Gallegos, Snead & Wertheim, John Wentworth, Santa Fe, for plaintiff-appellee.

## OPINION

STEPHENSON, Justice.

This action was brought by Eula Jean Allgood ("plaintiff") against Roy Orason ("defendant") in the District Court of Santa Fe County for modification of their California child custody order regarding visitation rights.

After trial to the court, the California decree was modified as to custody, visitation rights, and expenses, with a restraining order being placed on both parties. Defendant appeals.

The developments of this case, particularly the California battles over visitation, are rather remarkable even in the field of domestic relations. An interlocutory judgment of dissolution of marriage was entered by the Superior Court of California, County of Santa Clara in August 1970. Pursuant to stipulation, custody of the children was given to plaintiff subject to defendant's visitation rights. The judgment further provided that prior to permanent removal of either child from residence in California, the party so removing should secure the written consent of the other or a further order of the court.

The same restrictions were carried forward into the final judgment of dissolution entered in October 1970. But even prior to the entry of the final judgment, problems were arising concerning visitation. A hearing was held in September 1970 on a petition of plaintiff to permanently remove the children to Texas, and defendant's request for modification of the custody provisions and a contempt order against plaintiff. All relief sought by either party was denied in November 1970.

By January, 1971, plaintiff was back in court with another petition, this time to define the visitation rights and to obtain permission to remove the children from the Bay area. An order was entered spelling out the visitation rights more fully, and permitting plaintiff to take the children out of California for vacations of up to one month.

On February 20, 1971 plaintiff married Mr. Allgood and two days later left California. The Allgoods and the children have resided in Santa Fe since February 25th of that year.

In April, 1971, we again find plaintiff in the Superior Court of California again seeking to loosen the restrictions on where she may keep the children and tighten the visitation rights. On May 28, 1971 the California court entered the order with which we are primarily concerned, and will call the "California order." Notable features of the order include:

1. A change in custody provisions. Custody was awarded jointly to the parents, with plaintiff having "physical custody."

2. An even more elaborate spelling out of defendant's visitation rights during school holidays and weekends, consuming in all about three pages of the order, and providing for the exercise of those rights both in California and in Santa Fe.

3. Provision for the sharing between the parties of certain expenses of the children's travel to California and return when the visitation rights are exercised there, and of defendant's travel expenses when they are exercised in New Mexico. This is the provision which precipitated this proceeding.

The California order was not appealed, nor has plaintiff sought to have it modified.

Following entry of the California order, defendant commenced a continuous effort to exercise his visitation rights, but with indifferent success. He was able to see his daughters only twice, once in California and once in New Mexico, being met with a barrage of excuses by, and passive resistance on the part of, the plaintiff. Although the record is not entirely clear, apparently defendant initiated a contempt proceeding in California. He claims that plaintiff secured a continuance of it and then filed this proceeding on November 3, 1971. So far as we know, there have been no further hearings in California since the order.

■ A good deal is said in the briefs about whether the California order was res judicata and should be given full faith and credit under U.S.Const. art. IV, § 1. The foundation of our law with respect to enforcement of foreign custody decrees was laid in Ex parte Mylius v. Cargill, 19 N.M. 278, 142 P. 918 (1914). Mylius was a habeas corpus proceeding by the father to enforce a Texas decree giving custody rights to both the mother and the father and prohibiting the removal of the children from the State of Texas without consent of the court. The mother had removed the children to New Mexico without consent of the court and had thereby deprived the father of his custody rights. In determining whether the Texas decree was entitled to full faith and credit, this court said:

"'Under [the full faith and credit clause of] our national Constitution, this order is plainly a record to which, if the court has jurisdiction, the same faith and effect permitted it in the state of its rendition must be given in every other state. And the true rule in the state of its rendition is that it is res judicata concluding the question. But it does not conclude the question for all time, since new facts may create new issues * * *'. 2 Bishop on Marriage and Divorce (2nd Ed.) 1189.

"* * *.

"The soundness of this doctrine is apparent. The relation of parent and child is a status and may be changed with changing circumstances. The welfare of the child is always the paramount considera-

tion for the court in awarding the custody of children to one parent or the other in cases of divorce or separation. The welfare of the child may be best subserved at one time by awarding its custody to one parent, and at another time just the opposite course should be taken. These judgments are, necessarily, provisional and temporary in character and are, ordinarily, not res judicata, either in the same court or that of a foreign jurisdiction, except as to facts before the court at the time of the judgment."

We have consistently followed the principles established in Mylius by holding that foreign custody decrees are entitled to full faith and credit; and this means such decrees are res judicata, but only as to the facts before the court rendering the decree; Smith v. South, 59 N.M. 312, 283 P. 2d 1073 (1955); and that upon a showing of changed circumstances indicating the welfare of the child will best be served by a change of custody, the full faith and credit clause does not prohibit a modification of the foreign decree. Tuft v. Tuft, 82 N.M. 461, 483 P.2d 935 (1971) and the cases cited therein; Terry v. Terry, 82 N. M. 113, 476 P.2d 772 (1970). The controlling consideration is the welfare of the child. See e. g. Terry v. Terry, supra; Fox v. Doak, 78 N.M. 743, 438 P.2d 153 (1968); Smith v. South, supra; Albright v. Albright, 45 N.M. 302, 115 P.2d 59 (1941); Ex parte Mylius v. Cargill, supra.

As to the degree and kind of change in circumstances, we said in Albright v. Albright, supra:

"The changed circumstances must be substantial, and 'only a change in circumstances and conditions materially affecting the existing welfare of the minor, occurring since the former adjudication, may properly become the subject of inquiry and the basis of a change in the award of the minor's custody,' * * * Evens v. Keller, supra [35 N. M. 659, 6 P.2d 200]."

The moving party has the burden of proving that a legally sufficient change of circumstances has occurred. We said in Merrill v. Merrill, 82 N.M. 458, 483 P.2d 932 (1971):

"In a proceeding to modify a provision for the custody of minor children, the burden is on the moving party to satisfy the court that circumstances have so changed as to justify the modification. Every presumption is in favor of the reasonableness of the original decree. Kerley v. Kerley, 69 N.M. 291, 366 P.2d 141 (1961)."

Naturally, the trial court has considerable discretion in child custody awards. Merrill v. Merrill, supra; Kotrola v. Kotrola, 79 N.M. 258, 442 P.2d 570 (1968). But a generality concerning the breadth of the trial court's discretion cannot be permitted to serve as a device for circumventing the constitutional requirements of full faith and credit, the common law doctrine of res judicata and the requirements laid down in our precedents regarding the sufficiency of a supposed change in circumstances.

With these principles in view, the legal issue presented here is limited in scope. Has there been a change of circumstances which is substantial, which materially effects the children's welfare and which occurred between May 28 and November 3, 1971? Only an affirmative answer to these questions will permit us to sustain the trial court's order.

Quite a lot of the petition and evidence was taken up with assorted alleged delinquencies and shortcomings of defendant. Most of this had more or less evaporated by the time the proof was in and does not concern us. The petition, in summary, alleges that the California order is "burdensome and oppressive" in requiring plaintiff to share visitation expenses; that plaintiff cannot comply with it; that the traveling is bad for the children; that defendant is able to pay these expenses; and so on.

Most of the proof, which could be material here consisted merely of inveighing against the California order—that it was bad, unworkable and expensive. The trial

court in its findings said the California order was "burdensome for the children and for the plaintiff." It also found:

"That a material change in the circumstances of the parties has occurred since the entry of the order aforesaid requiring a change in the provisions of the said order for the best interests and welfare of the said minor children."

■ The trial court then gave the visitation provisions of the California order a general overhaul. Our inquiry is not whether the New Mexico order is better than the California one. We are inclined to think it probably is. Rather the question is whether the finding as to a material change in circumstances is supported by substantial evidence.

Plaintiff has precisely stated in her brief a summary of the evidence she relies upon to show a change of circumstances, reiterated upon oral argument by specific reference to the brief. This summary (in plaintiff's words, but separated and numbered for convenience and with our comments interspersed) is as follows:

1. Mrs. Allgood is simply not financially able to comply with the terms of the order requiring her to pay transportation expense.

   This is merely an attack on the order. No change is involved except for the better. She was not employed on May 28, but was on November 3, 1971.

2. Mrs. Allgood was remarried on February 20, 1971, and she and her husband and children have resided in New Mexico since February 25, 1971.

   These matters antedate both the hearing on the California order and the order itself.

3. Between April 16, 1971 and August 1971 the appellee was unemployed. April 16, 1971 was the date of hearing on the California order. The only material change here was for the better, as mentioned under item numbered one.

4. There have been quite visible changes in the children since they moved to New Mexico in that they have become well adjusted, they are and appear to be very happy children, they are making extremely good grades in school and are generally well adjusted happy little girls.

   This is another change for the better during the period with which we are concerned.

5. The children, when they go to California to see their father miss out on weekends and the activities which are going on, and on a couple of occasions have missed school plays which they cannot be in because they have to go somewhere else and they feel as if they are being deprived having to come out of school.

   This is another attack on the California order and its workings. No change of circumstances seems involved. The matters stated are neither substantial nor material. There is no evidence that such interference with minor childish pleasures worked to the disadvantage of the children's welfare or that they are not offset by the benefits of association with their father.

6. There has been a great deal of hostility which has developed between the parties since the decree was modified in April in California, and this hostility also involves the stepfather of the children.

   This is not evidence but a comment by the court prior to announcing its ruling. Changes which might have occurred prior to May 28 are immaterial. There is evidence of hostility but none that it has been worse since May 28 than before. There is a lack of evidence that this hostility had any substantial effect on, or that it is material to the welfare of the chil-

dren. Moreover there is a lack of evidence that the hostility was more the fault of the defendant than of the plaintiff. The court did not so find, and we would be sorry to see the defendant's visitation rights impaired or adversely effected on this account.

7. It would not be in the best interest of the children for them to fly to California and back by themselves once each month, and therefore, all the visitation rights are to be exercised in Santa Fe.

This is another comment by the court rather than evidence, but in any case, it does not even infer any change of circumstances, whether material, substantial or otherwise. It is merely an attack on the California order.

8. It is not going to work any hardship upon the appellant to pay the transportation for his children to visit him or to pay his own fare from California when he visits the children.

This is another comment by the court rather than evidence and is subject to the same comment.

In Merrill v. Merrill, supra, we were presented with an analogous situation. A divorce decree confirming a prior custody agreement giving custody of the children to the mother had previously been entered. The father, plaintiff in the action, subsequently remarried and sought to modify the custody agreement. In holding that the trial court abused its discretion in changing custody of the children to the plaintiff, we said:

"We cannot say that plaintiff's remarriage, having a stable home, that defendant may move to Albuquerque (citation omitted) or the fact that the defendant did not force the children to visit the plaintiff, constitutes a sufficient change in circumstances to warrant a modification of the original divorce decree. The record has been searched and it does not reveal *a material change of circumstances bearing upon the necessity or the justice of modifying the custody provision contained in the original divorce decree.*"

Similarly, the record in this case, if it reveals any change in circumstances, presents no evidence of a change of a substantial or material nature affecting the children's welfare or justifying the modification of the California order. Accordingly, we hold that the order appealed from must be reversed.

Appellee relies on Hoefer v. Hoefer, 67 N.M. 180, 353 P.2d 1066 (1960), in which we held that the domicile in good faith in New Mexico of the mother is sufficient basis for jurisdiction in New Mexico to enter a decree confirming a prior Kansas custody decree granting custody to the mother, even though during the pendency of the New Mexico proceeding, the Kansas decree had been modified. In Hoefer, we held only that New Mexico had jurisdiction to confirm a foreign custody order existing at the time domicile was established in New Mexico, and we stated that there was no issue of changing a prior custody order of a sister state.

Defendant also contends that the trial court erred in refusing to rule upon his request that the children be required to use the name "Orason," their legal name, rather than the name "Allgood," the name of their stepfather. He advanced no legal basis for this assertion, either at the trial court or here. Accordingly the decision of the trial court refusing the request is affirmed.

The order from which this appeal is taken is reversed. The case is remanded to the district court with directions to dismiss plaintiff's petition. Plaintiff is allowed $500.00 for the services of her attorneys in this court.

It is so ordered.

MONTOYA and MARTINEZ, JJ., concur.