526 P.2d 790

**Norma A. UNSER, Plaintiff-Appellee,**

v.

**Robert W. UNSER, Defendant-Appellant.**

**No. 9762.**

Supreme Court of New Mexico.

Aug. 2, 1974.

Rehearing Denied Sept. 18, 1974.

Farlow & Lill, LeRoi Farlow, Albuquerque, for appellant.

Marchiondo & Berry, Mary C. Walters, Albuquerque, for appellee.

## OPINION

ZINN, District Judge.

Appellant was the defendant in a divorce action brought by appellee as plaintiff. Six months after the decree was obtained, appellee applied for a modification of the terms of the decree as to child support and division of the community property and sought alimony. Relief was granted appellee under the theory of fraud and misrepresentation on the part of appellant, and a judgment was entered increasing child support from $200.00 to $400.00 a month, awarding her a money judgment in the sum of $60,628.00 in addition to the property and money originally awarded her, decreeing that appellant pay her alimony of $350.00 per month and awarding her $2,500.00 for attorneys' fees. Appellant seeks a reversal of this judgment and restoration of the original decree.

The appellant as defendant did not contest the original divorce action. Appellee selected her attorney without objection by appellant. He did not have counsel. The details of the property settlement and the amount of child support were mutually discussed by the parties before and after the complaint was filed. Both parties gave de-

tails of the proposed settlement to appellee's attorney. While no written stipulation or agreement was executed, they agreed to the terms of the proposed decree. Appellee's counsel informed her that the division of community property proposed would give her considerably less than an equal share. He advised her not to agree to the settlement. She acknowledged that she was aware of this inequality. Because of her attorney's apprehensions about this disparity, he prepared a written statement which she signed expressly acknowledging his advice and that the terms of the decree were as she wanted them. Her statement ended:

"* * * however, I have decided to accept the less than one half of the estate in final settlement due to my own personal reasons."

Within a week after filing the complaint and two days following their agreeing upon the terms of the decree, the appellee with her counsel appeared in court and presented the cause as a settled matter and obtained the decree. Appellant did not appear in court.

The theory of the grant of relief to appellee from the first judgment appears to have rested upon Rule 60(b) of the Rules of Civil Procedure [§ 21-1-1(60)(b), N.M.S.A.1953 (Repl. Vol. 4 1970)], giving a trial court jurisdiction to relieve a party from a final judgment upon timely application for certain grounds or reasons. The grounds include those of "fraud * * * misrepresentation, or other misconduct of an adverse party."

Setting aside husband and wife property settlements for fraud has been the subject of cases here and in other jurisdictions. Beals v. Ares, 25 N.M. 459, 185 P. 780 (1919); Trujillo v. Padilla, 79 N.M. 245, 442 P.2d 203 (1968). In Beals v. Ares, a husband, in contemplation of divorce made a property settlement with the wife through his attorney, in which she accepted $4,000.00 in settlement of her share of community assets worth over $100,000.00.

The wife did not have independent legal advice, she was not told the extent or the value of the community property, nor was she told of her entitlement to a half interest in the community property.

In Trujillo v. Padilla, the wife, who could not read English, executed documents in that language, a deed of the community property and an answer and waiver to a divorce proceeding, in the office of her husband's lawyer. She received nothing for her interest in the property. She was informed that the property was the separate property of the husband which was untrue. She had no independent counsel.

The court in each case evaluated the relationship and found the dominance of the husband and the confidence of the wife to exist.

Neither Beals v. Ares, nor Trujillo v. Padilla, held that the mere fact of marriage created a fiduciary relationship in which the husband presumptively occupies the role of dominance and the wife confidence. In each case the facts supported the existence of the dominion of the one and the confidence of the other.

The elements necessary to establish a fraud wrought by one of the persons who occupies a fiduciary relationship is not quite the same as in other circumstances.

If from the facts it appears that the parties have such a relationship to each other, and then as a result of confidence reposed by the one, dominion and influence resulting from such confidence can be exercised by the other, fraud and undue influence may be presumed to exist when an advantage is gained by the dominant party at the expense of the confiding party. Harrison v. Harrison, 21 N.M. 372, 155 P. 356 (1916).

Cases from other jurisdictions give some perspective on the issues of fiduciary relationships arising in the marriage and how to view the parties' relative positions as to dominance or confidence.

In Collins v. Collins, 48 Cal.2d 325, 309 P.2d 420 (1957), the parties agreed on the terms of a property settlement and divorce. The wife went to Nevada and obtained the divorce incorporating the settlement. Later she asked the California court to set aside the settlement on the ground of failure to disclose assets by the husband as a fiduciary.

In answering the wife's contentions the court from that opinion said:

"Plaintiff urges that on August 13, 1953, when she executed the property settlement and deeds, defendant had a fiduciary duty to her and was required to fully disclose to her the value and character of their property.

"Plaintiff, however, had ample opportunity to investigate, with the aid of independent counsel, the character and value of the property of the parties. Plaintiff had contemplated obtaining a divorce for some time before she made the property settlement agreement and obtained the divorce. Defendant did nothing to hinder her investigation of the property or to cause her to execute the agreement precipitately. Defendant owed plaintiff no duty to force her to investigate the properties when she announced that she was satisfied with the agreement prepared by defendant's counsel.

" ' * * * [3] The decision of plaintiff's attorneys to accept defendant's proposal without a contest, although now claimed to have been ill-advised and unfair to her was her decision and she is bound thereby.'

" * * * Here the parties were dealing with one another at arm's length—or at least the husband gave the wife every opportunity to deal at arm's length—when the settlement agreement was negotiated. The wife had independent advice. The fact that it appears that she was eager to secure a Nevada divorce and that therefore she did not obtain, or have her counsel obtain, a complete listing of the properties of the parties is not chargeable to the husband.

" * * * when the parties to a marriage are negotiating a property settlement with recognition that their interests are adverse and are dealing at arm's length, neither spouse owes to the other the duty of disclosure which he or she would owe if their relation remained in fact a confidential one. (See Migala v. Dakin (1929), 99 Cal.App. 60, 64, 277 P. 898; Chadwick v. Chadwick (1928), 95 Cal.App. 690, 700, 273 P. 86). They do not need to be embittered toward each other to act at arm's length; temperate negotiations of adverse interest is much more likely than rancorous combat to produce a fair property settlement agreement. It is a long recognized rule that such settlements between husband and wife (of course in the absence of fraud) are highly favored in the law. (McClure v. McClure (1893), 100 Cal. 339, 343, 34 P. 822; Hensley v. Hensley (1918), 179 Cal. 284, 287–288, 183 P. 445; Hill v. Hill (1943), 23 Cal.2d 82, 89, 142 P.2d 417; Adams v. Adams (1947), 29 Cal.2d 621, 624 [1], 177 P.2d 265; Patton v. Patton (1948), 32 Cal.2d 520, 523, 196 P.2d 909.)

" * * * Jorgensen v. Jorgensen (1948), 32 Cal.2d 13, 22–23, 193 P.2d 728. * * * held, 'A husband at the time of divorce or separation is entitled to take a position favorable to his own interest in claiming as his separate property assets that a court might hold to be community property. Confronted with the assertion by the husband that certain assets are his separate property the wife must take her own position and if necessary investigate the facts. (Citations.) If the wife and her attorney are satisfied with the husband's classification of the property as separate or community, the wife cannot reasonably contend that fraud was committed or that there was such mistake as to allow her to overcome the finality of a judgment. * * * Plaintiff is barred from obtaining equitable relief by her admission that she and her

attorney did not investigate the facts, choosing instead to rely on the statements of the husband as to what part of the disclosed property was community property.' "

Blair v. Blair, 140 Mont. 278, 370 P.2d 873 (1962) was an action brought by a divorced wife seeking to set aside a property settlement obtained in an Oregon divorce decree. After holding that the wife's attempt was a forbidden collateral attack on a judgment of a sister state entitled to full faith and credit in the courts of Montana, that court said:

"There was no trust established, express, implied or constructive as the result of these negotiations by plaintiff and defendant. On the contrary, both parties and their respective counsel were dealing at arm's length. See Buchmayer v. Buchmayer, 68 Cal.App.2d 462, 157 P.2d 9.

"The Florida Supreme Court in Cooper v. Cooper, Fla., 69 So.2d 881, denied the contention that there was a fiduciary relationship between husband and wife when a divorce action is pending. To the same effect is O'Melia v. Adkins, 73 Cal.App.. 2d 143, 166 P.2d 298; and Shlensky v. Shlensky, 369 Ill. 179, 15 N. E.2d 694."

Le Bert-Francis v. Le Bert-Francis, 194 A.2d 662 (D.C.App.1963) was another case in which the wife was attempting to get a property settlement set aside. Her main contention was that the burden of proof was on the husband to affirmately show that the separation agreement was made after full disclosure.

"Essentially the wife's argument is that every separation agreement in which the wife, for the consideration expressed in the agreement, releases the husband from all other obligations for support, is presumptively fraudulent. Some of the older cases lend support to this contention. They appear to be based on the early common law conception that a wife was so completely under the dominance of her husband that it was impossible for her to freely and voluntarily contract with him. More recent cases hold that there is no presumption that separation agreements are fraudulent, and that one who asserts the invalidity of such agreement has the burden of proving that it is tainted by fraud, duress or overreaching.

"Some of the earlier cases regard a separation agreement as presumptively fraudulent because of a supposed fiduciary or confidential relation existing between the parties, but even before the turn of the century Judge Sanborn speaking for the Eighth Circuit, used these oft-quoted words:

'The result is that the fact that the parties to the agreement of separation occupied the confidential relation of husband and wife did not render it presumptively void, and did not cast upon the appellees the burden of pleadings or of proving that it was just and fair to the appellant.'

"The modern trend holds that when a husband and wife have separated or are about to separate and seek by agreement to settle their respective rights and obligations they deal at arm's length. We need not go that far but we do rule that when husband and wife have separated and are negotiating a separation agreement the previously existing confidential relationship has been so impaired that it cannot of itself raise a presumption that any agreement reached will be invalid."

In each situation, the relationship that exists between the parties when the questioned transaction occurs or is undertaken is critical. The presumption of fraud that may be utilized to aid the party seeking to set aside the transaction is available only to the one proving that they were in the confidential relationship and the other party was in the dominant position. Without the fiduciary relationship existing in fact at the time of the agreement then, to set aside the transaction requires that fraud and misrepresentation be proven by the challenging party in the ordinary sense.

It is questionable as to whether the relationship of dominance and confidence existed between the parties to this action when the divorce settlement was made. The appellee was advised by independent legal counsel in the property settlement and divorce.

An examination of the findings of the trial court on the dominance of the husband and the confidence of the wife so as to support the conclusion it made of a trustee relationship is necessary to see whether the presumptions of fraud need be considered or whether actual fraud is required to support the action of the court.

The facts found by the trial court as to the confidential relationship of the parties were silent except as to the fact that they were married. Conclusions of law bearing on the subject relate:

"3. That defendant stands in a position of trustee and owed to the plaintiff a duty of full and fair disclosure as to the value of the property.

" * * *

"9. Throughout these divorce proceedings the plaintiff was controlled by the defendant.

" * * *."

■ The conclusion as to the trusteeship arising and imposing the fiduciary obligation upon the appellant husband and the statement as to control of plaintiff are not supported in the evidence or in the court's findings of fact.

■ Making a presumption of fraud and the imposition upon the appellant of the burden of disproving fraud under the Beals v. Ares, supra, formula was erroneous.

If the action of the trial court is to be supported on the basis of fraud and misrepresentation by the appellant, it must be based upon actual fraud.

A look at the record on the issue of actual fraud discloses the following in the decision of the court:

(Findings of Fact)

"10. * * *, the defendant falsely and fraudulently represented unto the plaintiff the following:

'If you accept the property that I am going to give you I will remarry you after the divorce and if I do not remarry you I will always take care of you and the children.'

(Conclusions of Law)

"1. That the defendant falsely and fraudulently represented unto the plaintiff that if she would accept his proposal on her share of community property and support, that subsequent to the decree of divorce he would marry the plaintiff.

" * * *."

The promise to marry mentioned in the finding and the conclusion quoted above need testing against the testimony. Appellee stated on direct examination:

"He told me that probably we would remarry and he said 'if you do it this way and don't make it hard on me,' he said, 'we'll probably remarry and if we don't I'll always see that you and the children are taken care of financially and any other way that I can.' "

"Q. Are you saying Mrs. Unser that the reason you allowed this decree to be entered was because your husband assured you that you would remarry and if that didn't happen he would see to it that your financial needs were taken care of?

"A. That's right."

The trial court's conclusion of an unequivocal promise of marriage, fraudulently made is not supported in the evidence nor by the court's own finding of fact.

■■ Fraud and misrepresentation under Rule 60(b) requires the same elements as fraud in the ordinary sense. An actionable fraud is a misrepresentation of a fact, known to be untrue by the maker, and made with an intent to deceive and to induce the other party to act upon it with the

other party relying upon it to his injury or detriment. Sauter v. St. Michael's College, 70 N.M. 380, 374 P.2d 134 (1962).

■■ Could the statement relating to remarriage be deemed a statement of fact? Sometimes statements made as to a present intent to act in the future when the stated intent is false and meets the other criteria of expected reliance and actual reliance to damage or injury have been a basis of actionable fraud. Werner v. City of Albuquerque, 55 N.M. 189, 229 P.2d 688 (1951); Pacific Royalty Company v. Williams, 227 F.2d 49 (10th Cir. 1955), cert. denied 351 U.S. 951, 76 S.Ct. 847, 100 L. Ed. 1474.

The court's finding and the testimony indicates the promise to marry was not a certain statement of present intent as to a future act but evidenced some reservation which was communicated clearly to the other party. That the promising party held a present intent not to perform the promised act when the promise was expressed is a matter for proof by the one complaining of fraud. Werner v. City of Albuquerque, supra. Neither the evidence nor a finding of fact establishes this.

In summary, the action of the trial court in setting aside all terms of the original decree except the dissolution of marriage was an improper action under Rule 60(b) of the Rules of Civil Procedure, supra. There was no showing of fraud, misrepresentation or misconduct on the part of the appellant which supports the action of the trial court in setting aside the essentials of the original divorce decree.

It was contended by appellee at trial, although not on appeal, that the court had jurisdiction to act upon the questions of alimony and child support under the terms of the decree first entered which reserved such jurisdiction, or under statutory provisions.

The original decree contained a final paragraph reciting:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that this Court shall maintain jurisdiction over the parties and the subject matter herein, to enter, any such orders as it may from time to time deem necessary."

The statute in force when the original decree was entered, § 22–7–6, N.M.S.A. 1953 reads in part:

"* * * the court * * * may modify and change any order in respect to alimony allowed the wife, whenever circumstances render such change proper; * * * and may modify and change any order in respect to the guardianship, care, custody, maintenance or education of said children, whenever circumstances render such change proper * * *."

■■ The general reservation of jurisdiction by the court is not effective to grant jurisdiction when it contravenes statutes fixing jurisdictional limits. This jurisdiction is conferred by statute and any reservation in the decree is ineffectual surplusage. See Mindlin v. Mindlin, 41 N.M. 155, 66 P.2d 260 (1937). We hold that a general reservation of jurisdiction is ineffective to uphold an award of alimony allowed after the entry of a final decree of divorce.

■■ The general rule is that where a divorce decree is silent on any award of alimony to the wife, that judgment is res judicata on the question of alimony and precludes a later alimony award. See Annot., 43 A.L.R.2d 1387.

As this court recently held in Gruber v. Gruber (No. 9691 filed June 28, 1974), 86 N.M. 523 P.2d 1353 (1974):

"* * * [our] § 22–7–6, supra, does not authorize an award of alimony subsequent to the entry of the final decree, when that decree did not initially award any alimony, unless the claimant is entitled to relief under Rules 59 or 60, supra, * * *."

Thus, in the present case, absent a showing of relief under Rules 59 or 60, the awarding of alimony to appellee by the trial court, when no alimony was awarded at

the time of the divorce, cannot be allowed under § 22–7–6, supra.

■ The increased child support awarded cannot be supported by the evidence or findings and conclusions entered in this case. While it remains within the jurisdiction of the trial court to make such a change in the event of a change of circumstance, such proof was not offered here. The requirement for a change in the amount of child support ordered is well established in New Mexico. § 22–7–6, supra, requires a showing of changed circumstances. As to the degree and kind of change in circumstances required, the change must be substantial, materially affecting the existing welfare of the child. The change in circumstances must have occurred since the prior adjudication where child support was originally awarded. See our review of the New Mexico cases in Allgood v. Orason, 85 N.M. 260, 511 P.2d 746 (1973); Merrill v. Merrill, 82 N.M. 458, 483 P.2d 932 (1971). See also Albright v. Albright, 45 N.M. 302, 115 P.2d 59 (1941).

■ As to the award of attorneys' fees, while the matter is discretionary, this discretion is exercised in the usual case where the party has achieved some success through litigation in asserting a right and imposing liability. The specific authority of the court is contained in § 22–7–6, N. M.S.A.1953, which has been construed to include attorneys' fees. That statute says:

"* * * and may make such order, relative to the expenses of the suit, as will insure the wife an efficient preparation and presentation of her case, * * *."

Dunne v. Dunne, 83 N.M. 377, 492 P.2d 994 (1972). An award of attorneys' fees in this case is inappropriate when the matter of attorneys' fees was covered by the original decree, and this effort to set aside that decree on ill-founded grounds has come to naught.

In view of the foregoing, the decision of the trial court is reversed and the cause remanded with instructions that the decree of September 18, 1970, be reinstated and the judgment of February 21, 1973, modifying that earlier decree be set aside.

It is so ordered.

McMANUS, C. J., and MONTOYA, J., concur.