2004-NMCA-020

85 P.3d 246

**Prakongsri RHOADES, Petitioner–Appellee,**

v.

**Daniel K. RHOADES, Respondent–Appellant.**

No. 23,663.

Court of Appeals of New Mexico.

Dec. 15, 2003.

Kathleen D. Carter, Carter Law Firm, P.C., Albuquerque, NM, for Appellee.

William R. Brummett, Albuquerque, NM, for Appellant.

**OPINION**

SUTIN, Judge.

{1} Respondent Daniel K. Rhoades appeals the district court's order requiring him to pay spousal support to Petitioner Prakongsri Rhoades after Petitioner's share of Respondent's retirement pay benefit was reduced due to an increase in Respondent's disability pay benefit. We affirm.

**BACKGROUND**

{2} The parties' twenty-two year marriage ended through a final decree and a first amended qualified domestic relations order (the order) both filed in 1994. Petitioner was awarded her appropriate share of Respondent's military retirement pay benefit. In 1996 Respondent became ill, increasing his disability rating and military disability pay, resulting in a reduction in his retirement pay. Petitioner's earlier-awarded share of Respondent's retirement pay benefit was thereby substantially reduced. In 1998 Petitioner sought enforcement of the final decree and the order requiring Respondent to pay Petitioner the full share of retirement pay that was originally awarded to her, plus arrearages.

{3} In 1999 Respondent filed a Chapter 7 proceeding in the United States Bankruptcy Court. Petitioner filed an adversary proceeding seeking a ruling that none of her share of the original retirement pay benefit awarded to her was dischargeable in bankruptcy. The bankruptcy court determined that Petitioner's pro-rata share of Respondent's retirement pay benefit was non-dischargeable. It also determined that neither Respondent nor his bankruptcy estate was

liable to Petitioner for the difference between the amount Petitioner was awarded and the amount she was currently receiving.

{4} Due to the reduction in Petitioner's share of Respondent's retirement pay, the district court entered an order under Rule 1–060(B) NMRA 2003 requiring Respondent to pay Petitioner spousal support. Respondent claims the district court erred because (1) a bankruptcy court determination barred the district court's award under the theory of collateral estoppel (issue preclusion), (2) the court should not have exercised jurisdiction to modify the parties' property settlement in the final decree and convert a portion to spousal support, and (3) the court improperly granted Petitioner relief under Rule 1–060(B).

## DISCUSSION

### Standard of Review

■ {5} The questions are all legal ones and we review them de novo. *Martinez v. Segovia*, 2003–NMCA–023, ¶ 9, 133 N.M. 240, 62 P.3d 331; *MPC Ltd. v. N.M. Taxation & Revenue Dep't*, 2003–NMCA–021, ¶ 11, 133 N.M. 217, 62 P.3d 308. Unchallenged findings of fact are conclusive on appeal. *Arnold v. Arnold*, 2003–NMCA–114, ¶ 2, 134 N.M. 381, 77 P.3d 285.

### The Collateral Estoppel (Issue Preclusion) Issue

■ {6} In the bankruptcy court, Petitioner objected to the dischargeability of the difference between her share of the retirement pay benefit awarded under the final decree and the order and the reduced amount she was receiving as a result of the increase in Respondent's disability benefit. Following an evidentiary hearing, the bankruptcy court on July 17, 2001, filed a memorandum opinion and a judgment directly on the issue. The bankruptcy court's memorandum opinion determined that the retirement pay benefit awarded to Petitioner in the final decree and the order was non-dischargeable pursuant to 11 U.S.C. § 523(a)(15), but then, in determining "the amount of the non-dischargeable debt," determined that Respondent was "[not] liable for the difference between the monthly share of military retirement benefit [Petitioner] initially received pursuant to the Final Decree and the [order], and the amount she has been receiving since [Respondent] began receiving an increased disability benefit."

{7} We set out the bankruptcy court's recitation of the factual background contained in its memorandum opinion. The parties do not contest the accuracy of this factual recitation.

The Final Decree, entered April 14, 1994, awarded [Petitioner] a pro-rata share of [Respondent's] military retirement benefits . . . [.]

The [order], entered in December of 1994, declared the interest in [Respondent's] United States Air Force Retirement Benefits divisible marital property, and awarded [Petitioner] a property interest in her share of the retirement benefits as her sole and separate property. Like the Final Decree, the [order] awarded [Petitioner] a share of the military retirement benefits in accordance with a formula, which, at the time of the entry of the [order], was specified as follows:

$$\frac{20 \text{ (years married)}}{24 \text{ (years in service)}} \times \$1363 \text{ (monthly benefit payment)} \times \tfrac{1}{2} = \$567.92 \text{ (non-member Spouse's portion of Monthly benefit payment)}$$

The [order] also provided for direct payment of [Petitioner's] share of the military retirement pay from the U.S. Defense & Accounting Service. Finally, the [order] included the following language:

In the event there is any period of time during which direct payments cannot be made to each respective party by the U.S. Government because of legal or processing difficulties, or because both parties do not qualify, and all retired pay is being paid only to the Respondent[ ], then Respondent[ ], upon receiving such pay, shall promptly pay the appropriate share to the Petitioner[ ]. Nothing herein shall obligate the Respondent[ ] to

pay retirement benefits to Petitioner[ ] if in fact he receives none for his service in the United States Air Force.

In accordance with the [order], [Petitioner] began receiving direct payment from the U.S. Defense & Accounting Service in the amount of $368.79 per month, representing [Petitioner's] share awarded in the Final Decree and [the order], less applicable taxes withheld by the U.S. Defense & Accounting Service prior to distribution.

At the time of the dissolution of marriage, [Respondent] had a thirty percent disability rating. Thereafter [Respondent] suffered a heart attack, and, in 1997, after making application, his disability rating increased to seventy percent. He then began receiving an increased disability benefit that resulted in a corresponding reduction in his monthly retirement benefit. Consequently, [Petitioner] began receiving only $223.74 per month, representing her share of the monthly military retirement benefit, after taxes, in accordance with the formula set forth in the Final Decree and the [order].

(Citations omitted.)

{8} After stating the law that debts in the nature of support, such as property settlements, were non-dischargeable, the bankruptcy court set out 11 U.S.C. § 523(a)(15)(A) and (B) as exceptions that apply when:

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

The bankruptcy court then elaborated as follows:

Subsection (A) is inapplicable to this proceeding. The Defendant does not contend that he is unable to pay. The evidence shows that, although he is on seventy-percent disability from the military, he manages to work approximately thirty hours a week as a letter carrier for the postal service, and approximately ten hours a week at Burlington Coat Factory. In addition, his veteran's disability benefit is not subject to taxes. Thus, even though the total benefit amount from the retirement and disability combined is the same as it was prior to [Respondent's] increased disability rating, his net benefit after taxes is greater because only the retirement portion of his benefit is subject to taxes.

Under subsection (B), the Court must conduct a balancing test to determine whether the benefit of discharging a debt outweighs the consequences to the non-debtor spouse if the debt were discharged. This analysis requires a consideration of the totality of circumstances.

The evidence here weighs in favor of [Petitioner]. [Petitioner] runs her own business as a seamstress, sewing military patches on uniforms, and doing alterations work. She testified that she works twelve hours a day, Monday through Friday, and often works on weekends. Although expenses for her business were comparable for the years 1999 and 2000, [Petitioner's] net business income after expenses, but before taxes, dropped from $32,039.49 in 1999 to $23,162.00 in 2000, making her average monthly business income $2,300.00 for the years 1999 and 2000. [Petitioner] continues to drive the 1984 Volvo she received as part of the dissolution of marriage proceedings. The car has suffered mechanical problems in recent years.

[Respondent] continues to live in the marital home, which he received in the dissolution of marriage proceedings. Although his disability has been increased from thirty percent to seventy percent, he continues to work two jobs: 1) part-time regular letter carrier for the postal service, working approximately thirty hours a week for $18.59 per hour; 2) sales associate at Burlington Coat Factory, working between ten and twenty hours a week for $10.35 per hour. [Respondent] occasionally picks up additional routes as a letter carrier, working more than thirty hours in those weeks,

and he tries to work twenty hours at Burlington Coat Factory as often as he can. Through his work for the postal office he participates in a Thrift Savings Plan and the Federal Employees Retirement System. He is also enrolled in the 401(k) plan offered by Burlington Coat Factory.

(Footnote and citations omitted.)

{9} The bankruptcy court then analyzed federal law, citing to the United States Supreme Court's decision in *Mansell v. Mansell*, 490 U.S. 581, 594–95, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), stating that "military retirement benefits that have been waived [under 10 U.S.C. § 1408(a)(4)(B) ] in order to receive disability benefits cannot be considered property divisible through dissolution of marriage proceedings." Noting this "harsh result" for former spouses, the bankruptcy court also stated that "some courts have determined that because *Mansell* only prohibits courts from ordering direct payments from disability benefits, a court can enforce an indemnification provision in a marital settlement agreement against the former military spouse provided that the source of payment is not the disability benefit."

{10} The bankruptcy court thought the result to be inequitable. However, the absence of an indemnification provision and the absence of any testimony or any language in the final decree or in the order clearly evidencing an intent to protect Petitioner against any reduction in her share of the retirement pay benefit led the bankruptcy court to hold against Petitioner. The court found "the evidence ... insufficient to conclude that the parties intended for [Petitioner] to receive a sum certain from [Respondent's] military retirement benefit which would obligate [Respondent] to pay any difference in the event of [Respondent's] waiver of retirement benefit in favor of an increased disability benefit." The bankruptcy court was also unpersuaded by Petitioner's argument that she was entitled to the benefit on the ground it was a vested property interest and her sole and separate property as some cases have determined. Whereupon, the court entered judgment stating that "neither [Respondent] nor his bankruptcy estate is liable for the difference between the monthly share of military retirement benefit [Petitioner] initially received pursuant to the Final Decree and the [order], and the amount she has been receiving since [Respondent] began receiving an increased disability benefit."

{11} The foregoing facts and bankruptcy court decision would have precluded the district court in the present case under collateral estoppel (issue preclusion) principles from requiring Respondent to turn disability pay over to Petitioner, or from interpreting the final decree or the order to require indemnification to Petitioner for the reduction in her share of the retirement pay benefit. *See Reeves v. Wimberly*, 107 N.M. 231, 233, 755 P.2d 75, 77 (Ct.App.1988) (setting out the elements of collateral estoppel, or issue preclusion, and stating "[c]ollateral estoppel works to bar the relitigation of ultimate facts or issues actually and necessarily decided in the prior suit by a valid and final judgment"). The district court, however, steered a different course. The district court did not address or decide any issue decided by the bankruptcy court. The district court awarded spousal support pursuant to Rule 1–060(B), seemingly to avoid federal law as to dischargeable bankruptcy debts and to skirt around issue preclusion.

{12} The district court's likely purpose, however, is irrelevant if the court had independent statutory authority to award spousal support. Respondent does not contest the award or the amount of the award on substantial evidence or abuse of discretion grounds. We need determine only the issue whether the district court had independent statutory or other authority to award spousal support.

### The District Court's Authority to Award Spousal Support

■ {13} NMSA 1978, § 40–4–7(F) (1997) reads:

The court shall retain jurisdiction over proceedings involving periodic spousal support payments when the parties have been married for twenty years or more prior to the dissolution of the marriage, unless the court order or decree specifically provides that no spousal support shall be awarded.

This statute provides express authority for a district court to award spousal support. However, when the issues were litigated in district court in 2002, the parties and the court believed that Subsection F was not applicable, mistakenly thinking it was not in existence at the time of the 1994 final decree. The provision was effective July 1, 1993, as Section 40–4–7(E) (1993). Knowing that now, Respondent asserts on appeal that even were the provision applicable in 1994, it does not permit modification eight years after the final decree to award spousal support, because the final decree was silent as to spousal support. Respondent cites *Unser v. Unser*, 86 N.M. 648, 654, 526 P.2d 790, 796 (1974), because under then current 1974 law, *Unser* held "a general reservation of jurisdiction [to be] ineffective to uphold an award of alimony allowed after the entry of a final decree of divorce," stating the general rule to be "that where a divorce decree is silent on any award of alimony to the wife, that judgment is res judicata on the question of alimony and precludes a later alimony award." *Id.*

{14} Petitioner urges us to determine that Section 40–4–7(E) (1993) was controlling, and that we do not have to reach the propriety of the court's application of Rule 1–060(B), although Petitioner contends that relief under Rule 1–060(B) was appropriate. She asserts that we should sustain the district court's decision if it was right for any reason. *See Meiboom v. Watson*, 2000–NMSC–004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 (upholding a district court decision based on erroneous rationale because it "will be affirmed if right for any reason" as long as upholding the decision is not unfair to appellant and substantial evidence supports the right reason); *Jaramillo v. Jaramillo*, 113 N.M. 57, 62, 823 P.2d 299, 304 (1991) ("A lower court's decision will be affirmed on review if that decision was correct, even though the court may have used an incorrect rationale in arriving at its result.").

{15} The district court found that the parties were married twenty-two years; there was an enormous difference in education and earning capacity; except for the Respondent's military retirement benefit, there were no significant assets of the marriage at the time of divorce; Respondent converted a significant portion of his retirement benefit into disability pay which became his separate property and not divisible; Petitioner's share of the remaining retirement benefit was considerably less than ordered at the time of the final decree; and Respondent intended to convert all the retirement benefit into disability pay in the near future, which would effectively eliminate Petitioner's award of her share of Respondent's retirement benefit, the only significant asset of the marriage.

{16} The district court then found that the ruling in *Unser* had been changed by Section 40–4–7 (1997), that "[t]wenty years of marriage represents a reservation of jurisdiction," and that this Court should reconsider *Unser* "as being disastrous in its application and in view of the statutory change of law in 199[7]." Thus, due to a misunderstanding of the effective date of the controlling language of the statute, the court did not rule based on Section 40–4–7. Rather, the court invoked "its equity powers" under Rule 1–060B(5) and (6), and "grant[ed] relief from judgment with respect to alimony."

{17} Section 40–4–7(E) (1993) expressly required the court to retain jurisdiction to determine spousal support in marital dissolutions involving parties married for twenty years or more, "unless the court order or decree specifically provide[d] that no spousal support shall be awarded." We construe Section 40–4–7(E) (1993) to mean what it says: in cases in which the marriage lasted twenty or more years, the court must retain jurisdiction to consider spousal support when the final decree was silent as to such support. Here, the final decree was silent as to spousal support. Section 40–4–7(E) (1993) applied and provided jurisdiction and authority for the district court to award spousal support, making it unnecessary for us to consider whether the court properly applied Rule 1–060(B). *See Meiboom*, 2000–NMSC–004, ¶ 20, 128 N.M. 536, 994 P.2d 1154; *Jaramillo*, 113 N.M. at 62, 823 P.2d at 304.

{18} Furthermore, we read Section '40–4–7(E) (1993), which is presently Section 40–4–7(F) (1997), to permit the award of spousal support where the cause for the award develops from financial inequity resulting from a

reduction in a spouse's share of military retirement benefits due to an increase in disability benefits, as in the present case. *See Foutz v. Foutz*, 110 N.M. 642, 644, 798 P.2d 592, 594 (Ct.App.1990) ("Proper apportionment of community property and debts depends on what is fair, considering all of the evidence with reference to the facts and circumstances of each case."); *Blake v. Blake*, 102 N.M. 354, 368, 695 P.2d 838, 852 (Ct.App. 1985) ("[T]he trial court may make whatever adjustments as necessary to achieve a fair and equitable division and disposition of the parties' property and other interests."). Respondent fails to argue or cite any authority to support his implication that the district court erroneously converted a portion of the final decree to alimony and thereby unlawfully modified the parties' property settlement. We have the prerogative to ignore legal propositions unsupported by citation to authority. *See ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998–NMCA–078, ¶ 10, 125 N.M. 244, 959 P.2d 969. We will not consider this issue.

{19} Finally, because the district court had independent statutory authority on which to award spousal support, the bankruptcy court's factual findings, legal conclusions, and judgment had no preclusive effect. No fact determination or legal conclusion on which the bankruptcy court's judgment was entered affected the district court's independent statutory authority to award spousal support under Section 40–4–7(E) (1993).

## CONCLUSION

{20} We affirm the district court's spousal support award.

{21} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and RODERICK T. KENNEDY, Judges.