2004-NMCA-092

96 P.3d 787

### Sandra de Castro BUFFINGTON, f/k/a Sandra de Castro McGorty, Petitioner–Appellee,

v.

### James McGORTY, Respondent–Appellant.

No. 23,639.

Court of Appeals of New Mexico.

May 14, 2004.

Michael Schwarz, Santa Fe, for Appellee.

Paul D. Gerber, Gerber & Bateman, P.A., Santa Fe, for Appellant.

## OPINION

VIGIL, J.

{1}  This divorce case requires us to distinguish a domestic relations hearing officer under Rule 1–053.2 NMRA 2004 (the Rule) from a child support hearing officer under the Child Support Hearing Officer Act, NMSA 1978, §§ 40–4B–1 to –10 (1988, as amended through 1993) (the Act).  For the reasons set forth in this opinion, we remand to the district court for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

{2}  In 1985, Father and Mother stipulated to the custody and child support of Daughter, and to the division of their assets and liabilities.  Father and Mother agreed to child support as follows:

> So long as the principal residence of the parties' [Daughter] is with wife, husband will pay twenty percent (20%) of his net disposable income for child support.  That income shall be determined annually: capital gains in the previous year and projected income for the upcoming year being the

basis for determining average net monthly income. Minimum child support commencing July 1, 1985 shall be $400.00 per month. Husband shall pay [Daughter's] medical expenses. Husband will pay day care expenses when she is in his physical custody. In addition, husband shall provide hospitalization insurance for [Daughter] or reimburse wife for that portion of the hospitalization policy that is attributed to the premium allocable to the children covered by wife's policy. If two children are covered by such policy, then one-half of the amount caused by the inclusion of the children in the coverage of the policy shall be ascribed to [Daughter].

The stipulations were approved by the district court and incorporated in the Final Decree of Dissolution of Marriage filed on July 1, 1985.

{3} The stipulation concerning Daughter provides, "[i]f either Parent leaves the vicinity they shall negotiate a residential plan for [Daughter] that enables both to have maximum continuing contact with [Daughter]." In 1988, Father filed a motion for order to show cause. Father alleged that Mother moved to Baltimore, Maryland in June 1987, that the parties were unsuccessful in negotiating a new residential plan and that Mother refused to negotiate any change in child support. Mother denied she refused to negotiate with Father regarding child support and said that the parties had been unable to resolve the child custody and support issues. Father also alleged and Mother denied that under the stipulation, Mother was indebted to him. The district court ordered the parties to attend mandatory mediation to attempt resolution of the custody and visitation rights issues.

{4} Mother then filed a motion alleging that Father had failed to pay child support in accordance with the stipulation. She subsequently withdrew the motion but reserved her right to seek an order compelling Father to pay her attorney's fees and costs in connection with the motion.

{5} No action was taken on Father's 1988 motion for order to show cause. On April 5, 1989, an administrative order was entered to show cause why the case "should not be dismissed or closed by reason of the inactivity of the file as it now pends." Mother responded that "the parties have been engaged in mediation and seek to continue the same." Father agreed and added that the parties and counsel had agreed "that the resolution of the other pending issues should await the results of mediation." No action was taken by the court at that time.

{6} On November 29, 1990, a second administrative order to show cause was filed under Rule 1–041(E)(2) NMRA 2004, noting that no apparent activity had occurred in the case within a substantial period of time and cause should be shown why the case should not be dismissed or closed "by reason of the inactivity of the file as it now pends." Father responded that the case involved an issue of custody and rights of visitation "as well as other matters concerning enforcement of the decree" and that mediation of the child custody matters had not been finalized. On January 25, 1991, an administrative order was filed under Rule 1–041(E)(2) denying Father's 1988 motion for order to show cause, "the Court finding that no action has occurred within a substantial period of time on the pending motion."

{7} Over eight years later on October 20, 1999, Mother filed a motion for enforcement of final decree and for award of attorney fees and costs, alleging that Father had failed to pay child support since June 1996, had failed to provide health insurance since 1988, and was obligated to reimburse Mother for health expenses incurred on behalf of Daughter. Father responded and denied that he owed child support and affirmatively stated that he paid more than his required child support since June 1996, that he had provided health insurance for Daughter since 1988, and that he was unaware of the alleged medical expenses incurred by Mother for Daughter. Further, Father alleged that if it was determined that he owed Mother any child support, any such sum would be more than offset by monies owed by Mother to Father under the property division stipulation. Father further alleged that demand had been made upon Mother for payment of those monies, but she failed and refused to make those payments. No action was taken on

Mother's motion. However, one year later on November 3, 2000, she filed an amended motion, making the same material allegations, and Father's response was likewise materially identical.

{8}   The parties then received notice for a "hearing to Determine Child Support Arrearages" before a "Domestic Relations Hearing Officer." When the hearing was held on September 12, 2001, Daughter was already emancipated. She had turned eighteen years old on May 28, 2000.

{9}   The evidence before the hearing officer was the following. Mother left Santa Fe and moved to Maryland with Daughter so Mother could attend school. She did not seek Father's consent for a modification of the child custody order before doing so. Shortly after the move, the parties agreed for Daughter to return to stay with Father in Santa Fe for the summer. At the end of the summer, Mother asked Father to keep Daughter in Santa Fe through the coming school year, which he did. There was no formal change in the child support order, but consistent with the original stipulation, Father did not pay child support during those periods of time when Daughter lived with him. At the end of the school year, Daughter went to spend the summer with Mother, who then decided to keep her in Maryland and enrolled her in school there. Father began paying child support monthly in the sum of $400 as stated in the stipulation. Father subsequently increased child support payments to $600 per month.

{10}   Daughter was enrolled at a boarding school in Maryland during each school year from September 1996 through June 2000 as agreed by Father and Mother. They agreed that Mother would pay "room and board" expenses and Father would pay all tuition and "everything else." Father testified that these payments exceeded his child support obligations under the stipulation but he agreed to pay them with the understanding that the payments would satisfy his child support obligations. Father testified that during the years 1996 through 2000, inclusive, he paid a total of $85,526 for tuition and "everything else." Beginning with Daughter's enrollment in boarding school, Father sent no further child support directly to Mother. This pattern continued for the four years that Daughter was in boarding school.

{11}   Mother waited until Daughter was in her last year in school to file the motion before the court. She asked for child support in addition to the monies which Father had paid for tuition and "everything else" at the boarding school with no credit to Father for his school payments. Specifically, Mother sought alleged child support arrears of $145,576, reimbursement for health care and dental insurance premiums in the amount of $4,059.60, and unreimbursed health care costs in the amount of $5,691.62.

{12}   Father denied he owed any child support and argued that if he did, he was entitled to an offset of $152,768.75, which represented funds owed by Mother to Father under the property division stipulation. When Father raised this issue before the hearing officer, she suggested she had neither the time nor the inclination to hear the issue, would take only limited questions on it, and would decide later if she would give that limited evidence any consideration. She said:

> I'm going to allow you to ask some questions. I, you know it seems to me from looking at what I've had a chance to look at so far that an issue of a loss on some kind of business arrangement on a piece of property could get fairly complicated. And if it looks to me like that's going to become so complicated it's going to exceed the time we have scheduled for the issues that we have dealt with today, um, that will affect how I deal with it, up to and including having to reschedule to continue the hearing, you know, which I think, I'm sure nobody wants to do. Um, so I am going to allow you to ask some questions about it. I'm going to reserve ruling on whether I have to give him any credit for anything assuming I find anything to give him credit for but I don't want to go, I don't want to have to deal with a lot of complicated issues contesting the loss of what is essentially sounds like a business arrangement. Okay.

{13}   The hearing officer filed her report on February 15, 2002. She recommended

that the court enter a judgment against Father in the sum of $92,366.51 to represent "child support arrears through May 2000." This consisted of $82,615.39 in child support, $5,691.62 in unreimbursed health care costs, and $4,059.60 in health care and dental insurance premiums. In doing so, she did not use the formula for determining child support contained in the stipulation, finding it "impossible to use," and she only allowed a partial credit for expenses paid by Father while Daughter attended boarding school. Significantly, the report of the hearing officer did not address in any manner Father's offset defense.

{14} The parties were advised that they had ten days to file written objections to the report of the hearing officer. "If no objections are received by the due date, the Report and Decision of Domestic Relations Hearing Officer shall be made an Order of the District Court."

{15} Father timely filed his objections to the report and requested a hearing on his offset issues. Father objected that the hearing officer improperly calculated child support obligations at 20% of "gross income" rather than 20% of "net disposable income" as provided in the stipulation. He also asked that the court hear and determine his offset defense since the hearing officer had made no findings or ruling on this defense. Mother also filed objections to the report.

{16} On March 22, 2002, a notice of hearing was filed setting Father's objections for a hearing on May 16, 2002. On March 27, 2002, the district court filed its order stating that objections were filed, the record was reviewed, and the objections noted. The district court ordered that the matter be recommitted to the hearing officer for a full hearing de novo. The district court then set aside that order pending hearing arguments of the parties at the previously scheduled hearing in May.

{17} Following the hearing, the district court entered its Order on Objections to Report and Decision of Domestic Relations Hearing Officer. Therein the district court noted that the report and decision of the hearing officer was filed on February 15, 2002, Father's objections were filed on February 26, 2002, and Mother's objections were filed on March 1, 2002. The district court concluded that since it took no action on the parties' respective objections within fifteen days after the objections were filed, Section 40–4B–8(C) of the Act required the hearing officer's decision to be accepted, and the hearing officer's recommendation to have the full force and effect of a district court decision. The district court therefore adopted the report and decision of the hearing officer as the final decision of the district court on June 17, 2002. A transcript of judgment in the amount of $92,366.51 for child support arrears was filed against Father the next day, June 18, 2002.

{18} Father thereupon filed a Motion to Set Aside the Implementation of the Report and Decision of the Domestic Relations Hearing Officer or for Reconsideration of the Court's Ruling on the Effectiveness of That Report and Decision on June 19, 2002. Therein, Father argued that the offered evidence showed he paid over $107,000 in child support. The hearing officer found that he had already paid almost $84,000 and ordered an additional $82,615.39 to be paid and almost $10,000 more toward medical expenses. Father again argued that this additional child support was improperly based upon 20% of average gross income before tax deductions. Father also argued that Mother owed him $152,768.75, but the hearing officer never ruled on the offset defense Father argued that the time limitation of Section 40–4B–8 of the Act was inapplicable to this case, but if it were, then the order should be set aside pursuant to Rule 1–060(B)(1) NMRA 2004.

{19} The district court then filed its Order Denying Respondent's Motion to Set Aside the Implementation of Report and Decision of Domestic Relations Hearing Officer on October 7, 2002. Therein, the district court reaffirmed that it lacked jurisdiction to set aside or modify the report and decision of the hearing officer because it had not acted upon the objections within fifteen days as required by Section 40–4B–8(C) of the Act. Further, the district court concluded, if it had acted upon the objections within fifteen days, it would have affirmed the report and decision of the hearing officer since it was

not clearly erroneous, not arbitrary, capricious, or an abuse of discretion, it was supported by substantial evidence in the record as a whole, and it was otherwise in accordance with law. Father filed his notice of appeal on November 5, 2002.

{20} The main issue on appeal is Father's assertion that the district court· erred in its conclusion that Section 40–4B–8(C) precluded the court from reviewing the hearing officer's recommendations. Father claims that the hearing officer was acting under the Rule, and therefore the time limitations of the Act do not apply to her recommendations. Mother asserts that the Rule incorporates the time limitations set forth in the Act, and therefore the court lacked jurisdiction to review the recommendations of the hearing officer after the fifteen day time period. This issue concerns questions of statutory interpretation and jurisdiction, which are legal issues reviewed de novo. *Rhoades v. Rhoades*, 2004–NMCA–020, ¶ 5, 135 N.M. 122, 85 P.3d 246.

## DOMESTIC RELATIONS HEARING OFFICER OR CHILD SUPPORT HEARING OFFICER

{21} The Rule and the Act describe both material similarities and material differences between a domestic relations hearing officer and a child support hearing officer. Both types of hearing officers are appointed and serve at the pleasure of the majority of the judges of the judicial district. Rule 1–053.2(A); Section 40–4B–4. Their qualifications are identical. Rule 1–053.2(B); Section 40–4B–4(B). That is, they "shall be lawyers who are licensed to practice law in this state and who have a minimum of five years experience in the practice of law, with at least twenty percent of that practice having been in family law or domestic relations matters." *Id.* Moreover, full-time domestic relations officers and child support hearing officers must devote full time to their duties, and they "shall not engage in the private practice of law or in any employment, occupation or business interfering with or inconsistent with the discharge of their duties." Rule 1–053.2(E); Section 40–4B–4(B). Both are required to conform to Rules 21–100 through –

500 NMRA 2004 and Rule 21–700 NMRA 2004 of the Code of Judicial Conduct. Rule 1–053.2(F); Section 40–4B–4(C).

{22} The Rule and the Act materially differ on what happens after a domestic relations hearing officer's recommendations or child support hearing officer's report is submitted or filed with the district court. Under the Rule, the domestic relations hearing officer makes recommendations to the district court. *See* Rule 1–053.2(C)(7), (8). This contemplates that further proceedings occur in the district court as we discuss later in this opinion.

{23} Under the Act, the hearing officer prepares a "report with a decision upon the matters submitted to him by the order of reference." Section 40–4B–8(A). "Within ten days after being served with notice of the filing of the report, any party may file written objections with the district court and serve such objections on the other parties." Section 40–4B–8(B). The Act then provides:

> If the district court judge wishes to review the hearing officer's decision de novo or on the record, he shall take action on the objections presented by the parties within fifteen days after the objections are filed. Failure to act by the district judge within the time allowed is deemed acceptance by the district court of the child support hearing officer's decision and will grant the decision the full force and effect of a district court decision.

Section 40–4B–8(C).

{24} Several features of this statute are noteworthy. A district court is not required to review the decision of the hearing officer, at all. The district court can simply fail to "take action" on the objections presented for fifteen days. On the other hand, the district court may want to review the objections, but may fail to "take action" on the objections for fifteen days for a variety of reasons, including an inability to schedule a hearing and make a decision within fifteen days. In either event, the result is the same: the hearing officer's decision is automatically given the "full force and effect of a district court decision." *Id.* Moreover, "[t]he effect of a child support hearing officer's report is the

same whether or not the parties have consented to the reference." Section 40–4B–8(E).

{25} The hearing officer, and the district court all apparently considered the hearing officer to be acting as a domestic relations hearing officer under the Rule. We agree. When the parties received the notice and amended notice of hearing, they were told, "this matter will come before [the] Domestic Relations Hearing Officer" and the notice was signed by the domestic relations hearing officer. The hearing officer identified herself as a domestic relations hearing officer in her report which recommended that the court order the relief that was ultimately granted. The parties were given notice of the filing of the report of the domestic relations hearing officer and were told they had ten days to file objections to the report. Father and Mother both filed objections to the report, and the district court's order refers to the objections to the report. Father's subsequent motion, Mother's response, and the district court's order also reference the hearing officer's report.

{26} We also agree with Father's argument that a reference to a hearing officer under the Act is limited to cases involving child support enforcement through the Child Support Enforcement Bureau of the Human Services Department. Section 40–4B–5 of the Act in pertinent part specifically states:

The presiding judge or his designee shall refer only matters concerning the establishment and enforcement of support obligations to a child support hearing officer in all of those proceedings in which:

A. the department as the state's Title IV D agency is acting as the enforcing party pursuant to an assignment of support rights under Section 27–2–27 NMSA 1978;

B. the department, pursuant to Section 27–2–27 NMSA 1978, is acting as the representative of a custodial parent who is not receiving aid to families with dependent children; and

C. the department is the enforcing Title IV D party pursuant to a written request for enforcement of a support obligation received from an agency in another state responsible for administering that state's federal Title IV D program.

{27} The matters that can be referred to a hearing officer under the Rule are much broader. Under Rule 1–053.2(C):

A domestic relations hearing officer may perform the following duties in domestic relations proceedings:

(1) review petitions for indigency;

(2) determine if petitioners' requests for temporary restraining orders should be granted;

(3) conduct hearings on the merits of petitions;

(4) carry out the duties of a child support hearing officer as set forth in the Child Support Hearing Officer Act;

(5) assist the court in carrying out the purposes of the Domestic Relations Mediation Act;

(6) upon the filing of a petition for dissolution of marriage or a petition for division of property, hold an interim hearing on:

(a) allocation of income and expenses of the parties; and

(b) child support. Interim hearings on child support shall be conducted in the manner provided by the Child Support Hearing Officers Act;

(7) prepare recommendations to the district court regarding allocation of income and expenses, child support and custody matters; and

(8) prepare recommendations to the district court regarding disposition of requests for orders of protection.

{28} We hold that the hearing officer in this case was acting under Rule 10053.2(C)(7) to "prepare recommendations to the district court regarding ... child support ... matters."

## RELATIONSHIP BETWEEN HEARING OFFICER AND DISTRICT COURT

{29} We have determined that the hearing officer was acting under the Rule to prepare recommendations to the district court regarding child support matters. The hearing officer prepared a report, and she made recommendations to the district court.

Under the Rule, "[a]ll orders must be signed by a district judge before the recommendations of a domestic relations hearing officer become effective." Rule 1–053.2(C). We now discuss how this is accomplished.

{30} Rule 1–053.2 contains no express provision giving the parties a right to object to the report and recommendations of the hearing officer. However, the parties were given that right in this case. We hold that it is required that the parties be given an opportunity to submit objections to a hearing officer's report and recommendations. This is fundamental to the due process concept of having an opportunity to be heard by a judicial officer. The parties here were given ten days to file objections. We assume this is adequate. *See, e.g.,* Rule 1–053(E)(2) NMRA 2004 (stating that within ten days after being served with notice of the filing of a special master's report, any party may serve written objections thereto upon the other parties).

{31} The district court must then hold a hearing on the merits of the issues before the court, including the hearing officer's recommendations and the parties' objections thereto. After the hearing, the court may adopt the hearing officer's recommendations, modify the recommendations, reject in whole or in part the recommendations, or receive further evidence or recommit the matter to the hearing officer with instructions. *See, e.g., id.* (stating that after hearing on objections to the specials master's report, district court may adopt the report, modify it, reject it in whole or in part, receive further evidence, or recommit with instructions). As in *Lujan v. Casados-Lujan,* 2004–NMCA–036, ¶ 19, 135 N.M. 285, 87 P.3d 1067 (N.M.Ct.App.2003), which involved a hearing before a special commissioner, we do not hold that "only a transcription of the hearing before the [hearing officer] will [e]nsure that the district judge plays his or her appropriate role." The nature of the hearing and review to be conducted by the district court will depend upon the nature of the objections being considered. However, the record of the hearing held before the district court must demonstrate that the court in fact considered the objections and established the basis for the court's decision. *See Mora v. Martinez,* 80 N.M. 88, 89–90, 451 P.2d 992, 993–94 (1969) (stating that purpose of requiring court to file findings of fact and conclusions of law is to place on the record the basis of the decision of the district court and require care on the part of the judge in consideration and adjudication of the facts). In this way, the parties are assured that the issues have been decided by a judge vested with judicial power and an appropriate record is made to allow for appellate review of the district court's decision. The hearing officer assists the district court in determining the factual and legal issues, and the core judicial function is independently performed by the district judge. This procedure is implicit in the requirement of the Rule that "[a]ll orders must be signed by a district judge before the recommendations of a domestic relations hearing officer become effective." Rule 1–153.2(C).

■ {32} The court erroneously concluded the Act precluded it from reviewing the report and recommendations of the hearing officer. The district court's order then implies that it had reviewed the objections to the hearing officer's report, and if it could, it would affirm the hearing officer. Mother argues that the court should be affirmed as "right for any reason." We decline to adopt that argument for the reasons stated in the remainder of the paragraph. The nature and extent of the review undertaken by the district court is insufficient for us to review on appeal. It is therefore necessary to reverse the order of the district court and remand the case with instructions to the court to conduct a hearing, consider the objections of the parties to the hearing officer's report, rule on those objections, and establish a basis for the district court's actions.

**FATHER'S OFFSET DEFENSE**

{33} Mother argues on appeal that Father is not entitled to his defense of an offset because of the administrative order entered on January 25, 1991, denying Father's 1988 motion for order to show cause.

■ {34} Mother's argument overlooks the fact that the motion was denied on January 25, 1991, after it was pending since 1988, because "no action has occurred within

a substantial period of time on the pending motion." The motion was denied under the provisions of Rule 1–041(E)(2) which states in pertinent part that on its own motion the court may dismiss any claim on which no significant action has been taken within the previous 180 days. Furthermore, the rule provides, "[a]t least twice during each calendar year, the court shall review all actions governed by this paragraph." *Id.* Such a dismissal is "without prejudice", *id.*, and it is not the "law of the case" as Mother argues. This rule simply "provide[s] a standardized procedure for district courts to evaluate the intentions of parties and their counsel and to rid their dockets of cases that should not be carried as active cases." *Vigil v. Thriftway Mktg. Corp.,* 117 N.M. 176, 179–80, 870 P.2d 138, 141–42 (Ct.App.1994).

{35} Mother does not argue that Father is not substantively entitled to an offset defense. *See Ingalls v. Ingalls,* 119 N.M. 85, 89, 888 P.2d 967, 971 (Ct.App.1994) ("In a proceeding to enforce a child support order, the trial court also has latitude to consider any equitable defense."); *Hopkins v. Hopkins,* 109 N.M. 233, 237, 784 P.2d 420, 424 (Ct.App.1989) (stating that "in the context of contempt proceedings, the court has the power to consider any valid defense, including ... payment from another source, or equitable defenses such as laches and waiver"); *see also Mask v. Mask,* 95 N.M. 229, 231, 620 P.2d 883, 885 (1980) (stating that "in a proceeding for the enforcement of a support order, any valid defense ... including the defense of payment from some other source" may be raised).

{36} We cannot review the issue relating to Father's offset defense on appeal because he has never received a ruling from the district court on the defense. When the issue was raised before the hearing officer, she suggested she had neither the time nor inclination to hear the issue and would take only limited questions on that issue and decide later if she was going to give that limited evidence any consideration. In her report, the hearing officer did not address in any manner Father's offset defense. Father objected to the hearing officer's report partly on the basis that he had received no ruling on his offset defense. The district court subsequently ruled because of the fifteen-day time limitation under the Act, it was without jurisdiction to review Father's objections. The court then entered a second order reaffirming that it had no jurisdiction to set aside or modify the hearing officer's report. However, it added that even if it could review the report, it would affirm the report and decision of the hearing officer. The precise nature and extent of the judicial review accorded to Father's offset defense is silent in this record. We must therefore reverse and remand for consideration of the offset issue.

**TIMELY NOTICE OF APPEAL**

{37} Mother suggests that Father's notice of appeal was untimely. Mother's argument relies on Section 40–4B–9 which states that a notice of appeal is to be filed within thirty days after the hearing officer's decision becomes final. However, we have already held that the proceedings in this case were not under the Act. The final order of the district court was filed on October 7, 2002, and Father timely filed his notice of appeal on November 5, 2002. *See* Rule 12–201(A)(2) NMRA 2004 (stating that except for an appeal from a decision or order suppressing or excluding evidence, or requiring the return of seized property, notice of appeal must be filed within thirty days after the judgment or order appealed from is filed in the district court clerk's office).

**CONCLUSION**

{38} The order of the district court affirming the report of the hearing officer is reversed. This case is remanded to the district court for further proceedings consistent with this opinion.

{39} **IT IS SO ORDERED.**

A. JOSEPH ALARID and JONATHAN B. SUTIN, JJ., concur.