# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: April 25, 2017

**NO. 33,418**

**GARY M. ROSS,**

Petitioner-Appellee,

v.

**STEPHANIE NEGRON-ROSS,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alisa A. Hadfield, District Judge**

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellee

Stephanie Negron
Ocean Park, PR

Pro Se Appellant

**_____OPINION**

**GARCIA, Judge.**

{1}     This case arises from a question of first impression regarding whether a marital community estate is entitled to an equitable lien on a spouse's sole and separate property when community funds have contributed to the equity in the property but the property has diminished in value due to declining market conditions. We hold that the community's contributions to the sole and separate property create the right to a community lien even when the property decreased in value. We adopt the formula utilized by the Arizona Court of Appeals in *Valento v. Valento*, as the method for calculating the community lien in this case and as an extension of the principles set forth in our prior case law. *See* 240 P.3d 1239, 1243-45 (Ariz. Ct. App. 2010). As a result, we reverse the district court on this issue. On remand, we leave it to the discretion of the district court to determine the proper apportionment of this community lien. We further hold that the district court did not abuse its discretion in determining that (1) substantial evidence existed regarding Wife's breach of her fiduciary duty to Husband through the embezzlement of funds from his dental practice, and (2) the parties were required to pay their own attorney fees.

**BACKGROUND**

{2}     This appeal comes before this Court following the dissolution of marriage and

division of property owned by the parties. Gary M. Ross (Husband) and Stephanie Negron-Ross (Wife) were married on September 11, 2010. At the time they were married, both parties owned assets of significant value. Husband, age fifty-eight at the time of the marriage, was a dentist and owned a private dental practice. Husband also owned several rental properties held by a limited liability corporation, the commercial property where his practice resides, and his personal residence in Albuquerque, New Mexico (the Spring Creek residence). Husband purchased the Spring Creek residence in 2004 for $799,000. Husband paid $160,000 as a down payment on the Spring Creek residence. The Spring Creek residence subsequently depreciated in value and was appraised at $700,000 at trial. Additionally, the Spring Creek residence was subject to two mortgages totaling $559,131 at the time of trial.

{3}      Prior to the marriage, Wife, age fifty-four at the time of the marriage, worked in marketing for seventeen years and owned her own business for twelve years. Wife testified that she donated real property in Puerto Rico to her daughters in September 2009. However, she continued to make mortgage payments and receive rent from the property. The district court characterized the donation as "alleged" and found that Wife's testimony was not credible. During the marriage, Wife worked at Husband's dental practice earning a gross monthly income of $5,000. The district court found that during the marriage, "Wife breached her fiduciary duty and embezzled money

2

and stole property from Husband's dental practice [in] the sum of $48,341." Husband was subsequently reimbursed through insurance for those losses.

{4} The parties separated on September 9, 2012, after less than two years of marriage, and Husband filed for a petition for dissolution of marriage on October 26, 2012. A minute order, filed on February 22, 2013, set an interim division of income and expenses. At the time the interim order was entered, Husband's monthly income was found to be $9,026 and Wife's monthly income was found to be $2,860. The district court entered a partial divorce decree dissolving the parties' marriage on June 21, 2013. Following several days of trial, the district court entered a final decree and judgment (final judgment) on October 4, 2013.

{5} The district court's final judgment included factual findings and rulings regarding the distribution of the parties' property including the real estate, bank accounts, and other assets. We only address those findings and rulings that are relevant to this appeal. With regard to the Spring Creek residence, the district court found that "[a]fter deducting the mortgage debt and Husband's sole and separate down payment the Spring Creek residence has a negative value" and that "the expenditures on the Spring Creek residence during the marriage" did not increase its value. Husband was awarded the Spring Creek residence as his sole and separate property, and the district court found "no community lien" to have been created

against this residential property. Based upon several enumerated factors, the district court also ruled that "[e]ach party shall pay their own attorney fees[.]"

{6}      On appeal, Wife contests three of the district court's findings of fact or legal rulings: (1) that the Spring Creek residence was not subject to a community lien, (2) that Wife breached her fiduciary duty to Husband by embezzling a significant amount of money from his dental practice, and (3) that each party pay their own attorney fees.

**DISCUSSION**

**I.      The Community is Entitled to a Lien on Separate Property That Depreciates in Value When Community Funds Were Used to Pay the Mortgage That Benefitted the Separate Property**

{7}      Wife argues that the district court erred in declaring that no community property lien was created against Husband's separate property assets. Whether the district court erred in finding no community lien on the Spring Creek residence is a question of law that we review de novo. *See* NMSA 1978, § 40-3-8(A), (B) (1990) (defining separate and community property); *Styka v. Styka*, 1999-NMCA-002, ¶ 8, 126 N.M. 515, 972 P.2d 16 ("[W]e review questions of law de novo.").

{8}      "In New Mexico, property takes its status as community or separate property at the time and by the manner of its acquisition." *Zemke v. Zemke*, 1993-NMCA-067, ¶ 18, 116 N.M. 114, 860 P.2d 756 (internal quotation marks and citation omitted). "[A]ll property brought to . . . marriage by either spouse or acquired during marriage

4

by gift, bequest, devise or descent, together with its rents, issues and profits[,]" is separate property. *Portillo v. Shappie*, 1981-NMSC-119, ¶ 12, 97 N.M. 59, 636 P.2d 878. All property "acquired by either or both spouses during marriage, which is not separate property," as well as its rents, issues, and profits, is community property. *Id.* However, "[a]pportionment is appropriate when separate property is enhanced through community efforts [(funds),] or when an asset is acquired with both separate and community funds." *Trego v. Scott*, 1998-NMCA-080, ¶ 5, 125 N.M. 323, 961 P.2d 168. "The [district] court must apportion the value enhanced by community funds between the separate and community estates." *Id.* ¶ 13. The community is, therefore, entitled to a lien against the separate property of a spouse for the contributions made by the community that enhanced the value of the property during the marriage. *See Jurado v. Jurado*, 1995-NMCA-014, ¶ 10, 119 N.M. 522, 892 P.2d 969.

{9}    Previously, this Court has stated that it is the "increase in the value of the [separate property] asset that is apportioned among separate and community interests." *Id.* As such, this Court has adopted different formulas to calculate the apportionment, all of which assume an appreciation in the property's value, and incorporate varying factors depending on the pertinent facts. *See id.* ¶ 11 ("Any increase in the value of separate property is presumed to be separate unless it is

rebutted by direct and positive evidence that the increase was due to community funds or labor."). However, our prior case law fails to adequately address the community's interest, if any, in separate property that has depreciated in value due to market conditions that are present during the marriage.

{10} In *Valento*, the Arizona court addressed a residential mortgage payment issue that is substantially similar to the one being disputed by the parties in the present case. 240 P.3d at 1242-45.The Arizona court reasoned that when a separate property residence depreciates but positive equity remains in the asset, the court should recognize a community lien in an amount "equal to the reduction [of the] principal indebtedness attributable to the community contribution." *Id.* at 1244. By making community contributions toward principal that does create an increase in equity, "the presence of [any] positive equity means that the owner-spouse can actually realize the benefit conferred by the community." *Id.* "If the community contributions were not recognized in the form of a lien, the owner-spouse would receive a windfall from the community." *Id.* However, in the event that the property has negative equity, "[i]t would be illogical . . . to hold that the community should receive the full benefit of its contributions to principal when a portion of the equity it created can no longer be realized." *Id.* The Arizona court therefore applied the following formula when the value of a separate property asset has decreased during the marriage but positive

6

equity remains in the property and the community has paid contributions toward the principal indebtedness against that property:

> C-[C/B x D]; where D = depreciation in value of the property during the marriage, B = value on the date of the marriage, and C = community contributions to principal or market value.

*Id.* The application of this Arizona formula is a logical extension of New Mexico case law to calculate a community lien when community funds are used to enhance the equity in an owner-spouse's separate property even where other factors have caused the value of the property to decrease during the term of the marriage.

{11}     In the present case, the community—through its contribution to pay the principal mortgage against the Spring Creek residence—is entitled to a lien against Husband's remaining equity in the Spring Creek residence even though the residence declined in value during the marriage. It is undisputed by the parties that Husband purchased the Spring Creek residence prior to his marriage to Wife, the residence is his sole and separate property, and the residence declined in value during the parties' marriage. Additionally, Husband does not dispute that community funds contributed to the payment of the mortgage. Applying principles and the formula now adopted from *Valento*, the district court must determine the value of the community lien that exists against the Spring Creek residence.

{12}     Husband argues that the district court's finding of no community lien on the

Spring Creek residence remains equitable under the circumstances of this case. He contends that the district court could have balanced other factors against Wife's community property claims, including its findings that "the community substantially depleted Husband's separate property investment accounts" and that "Wife breached [her] fiduciary duty." However, our holding and adoption of the principles from *Valento* is exclusively an issue of law, and we will not intervene to address how the district court should apply its continuing equitable discretion to apportion the community lien that was created. *See Gomez v. Gomez*, 1995-NMCA-049, ¶¶ 2, 5, 119 N.M. 755, 895 P.2d 277 (recognizing that legal error is addressed first, especially where its resolution would be determinative on the district court's remaining decisions), *superseded by statute on other grounds as stated in Erickson v. Erickson*, 1999-NMCA-056, ¶ 25, 127 N.M. 140, 978 P.2d 347. On remand, the district court must still address how to apportion the community lien that was created in order to achieve substantial justice. *See Dorbin v. Dorbin*, 1986-NMCA-114, ¶ 15, 105 N.M. 263, 731 P.2d 959 ("At divorce, the asset is apportioned between separate and community interests in a manner which achieves substantial justice."). The district court is given broad discretion to consider all relevant factors when making this equitable division of community property. *See Scott*, 1998-NMCA-080, ¶ 22 (noting that the district court has broad discretion when it exercises its power to divide

8

community property equally between the parties). We therefore remand this matter to the district court to calculate the community lien against the Spring Creek residence and to make a proper apportionment of this lien as it deems appropriate.

**II.	The District Court's Remaining Findings and Conclusions Were Supported by Substantial Evidence and Were Not an Abuse of Discretion**

{13}	Wife makes two additional arguments on appeal. First, she argues that "[t]he district court erred in finding that [she] breach[ed] her fiduciary duty to [H]usband and embezzled a significant amount of funds from [H]usband's dental practice." Second, Wife contends that the district court erred in not requiring Husband to pay her attorney fees. The district court made several consecutive findings relating to these arguments:

83.	Husband earns significantly more income than Wife[;]

84.	Both parties have assets with significant value[;]

85.	Husband prevailed at trial[;]

86.	Wife breached her fiduciary duty to Husband and embezzled a significant amount of funds from Husband's dental practice[; and]

87.	Balancing the competing factors enumerated in paragraphs 83 to 86, each party shall pay their own attorney fees.

**A.	The District Court's Determination That Wife Breached Her Fiduciary Duty and Embezzled Money From Husband's Dental Practice Was Supported by Substantial Evidence and Was Not an Abuse of Discretion**

{14}	Wife argues that the district court's finding eighty-six— that she "breached her

9

fiduciary duty to Husband and embezzled a significant amount of funds from Husband's dental practice"—was an abuse of discretion, not in accordance with the law and not supported by substantial evidence. However, Wife does not address the numerous findings and conclusions entered by the district court that were also related to its determination regarding the issues of embezzlement and breach of fiduciary duty, specifically, findings sixty-seven, sixty-eight, and eighty, as well as conclusions of law. *See Rhoades v. Rhoades*, 2004-NMCA-020, ¶ 5, 135 N.M. 122, 85 P.3d 246 ("Unchallenged findings of fact are conclusive on appeal."). Furthermore, Wife has failed to indicate what remedy or result she is seeking if we only reverse finding eighty-six. *See Morris v. Merchant*, 1967-NMSC-026, ¶ 24, 77 N.M. 411, 423 P.2d 606 (recognizing that our appellate courts "will not correct errors which, even if corrected, will not change the result"). Because Wife does not develop any of her other arguments and only directs this Court to finding eighty-six, we are left with just one remaining argument—that finding eighty-six was not supported by substantial evidence. *See Clayton v. Trotter*, 1990-NMCA-078, ¶¶ 16-17, 110 N.M. 369, 796 P.2d 262 (stating that the appellate court will review the arguments of self-represented litigants to the best of its ability, but cannot respond to unintelligible arguments); *see also Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that an appellate court need not review an

undeveloped argument). We, therefore, limit our review to the issue of whether the district court's finding eighty-six, that Wife breached her fiduciary duty to Husband and embezzled a significant amount of funds from Husband's dental practice, was supported by substantial evidence.

{15}     In our review of the challenged finding, we view the evidence "in the light most favorable to the findings and judgment entered [by the district court]." *Jurado*,1995-NMCA-014, ¶ 8. "If substantial evidence exists, then the conclusion of law must be upheld absent an abuse of discretion. This Court indulges in all reasonable inferences that can be drawn from the evidence in support of the judgment." *Id.* (citations omitted).

{16}     Substantial evidence was presented by Husband regarding monies taken from his dental practice, including exhibits and expert testimony. Although Wife challenged the truthfulness and credibility of this evidence, she does not otherwise substantively dispute its content or the inferences and conclusions that it supported. *See id.* ("This Court indulges in all reasonable inferences that can be drawn from the evidence in support of the judgment."). The district court also accepted the credibility of Husband's testimony and evidence but did not find Wife's testimony to be credible. As a result, we determine that substantial evidence was presented to support the district court's finding eighty-six. We affirm the district court's ruling on this

issue.

**B.    The District Court's Determination That Each Party Pay His or Her Own Attorney Fees Was Not an Abuse of Discretion**

{17}    "We review a [district] court's decision whether to award attorney fees in a marital dissolution and property division case for abuse of discretion." *Muse v. Muse*, 2009-NMCA-003, ¶ 71, 145 N.M. 451, 200 P.3d 104. When reasons both supporting and detracting from a decision exist, there is no abuse of discretion. *Talley v. Talley*, 1993-NMCA-003, ¶ 12, 115 N.M. 89, 847 P.2d 323.

{18}    Rule 1-127 NMRA governs the award of attorney fees in domestic relations cases. In such cases, "the district court is to consider a number of factors including disparity of the parties' resources, prior settlement offers, the total amount of fees and costs expended by each party, and the success on the merits." *Weddington v. Weddington*, 2004-NMCA-034, ¶ 27, 135 N.M. 198, 86 P.3d 623. No single factor is dispositive. *See id.* ¶ 28 (holding that "disparity is only one factor to be considered and disparity cannot support reversal where the other factors weigh in favor of the award of attorney fees"). Wife's breach of fiduciary duty and embezzlement of monies, a separate issue that Husband prevailed upon in the district court, is only modestly relevant to the above factors. As such, even though we affirm that finding eighty-six was supported by substantial evidence, it is not a significant consideration in determining whether Wife was entitled to an award of attorney fees. We, therefore,

12

focus primarily on the district court's other three findings in determining whether the court erred when it ruled that each party should pay their own attorney fees.

{19} The remaining three findings by the district court are set forth in paragraphs eighty-three through eighty-five. We recognize that the district court did not enter any findings regarding prior settlement offers or the total amount of fees and costs expended by either party. The district court instead looked to the disparity of the parties' resources and each party's success on the merits. The finding by the district court that Husband earns significantly more than Wife is a finding in her favor for an award of attorney fees, but the court's finding that Husband prevailed at trial weighs against her. The district court's finding that both parties have assets of significant value also factors into any determination regarding the disparity of the parties' resources and further supports the determination that each party has the financial ability to pay his or her own attorney fees. *See Allen v. Allen*, 1982-NMSC-118, ¶¶ 16-18, 98 N.M. 652, 651 P.2d 1296 (noting that when neither party is economically oppressed, the district court acts within its discretion to require each party to pay its own attorney fees). As these factors can be balanced out neutrally and support the district court's decision to require each party to pay their own attorney fees, we conclude that the district court did not abuse its discretion. *See Talley*, 1993-NMCA-003, ¶ 12.

# CONCLUSION

{20} We reverse the district court's failure to recognize the existence of a community lien and to calculate the community lien against the Spring Creek residence. We remand this matter to the district court for further proceedings in order to address the community lien against the Spring Creek residence and to make a proper apportionment of this lien as it deems appropriate. We uphold the district court's remaining rulings, including the requirement that each party pay his or her own attorney fees.

{21} **IT IS SO ORDERED.**

                 _____

                 **TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**M. MONICA ZAMORA, Judge**